2002 UT 5

**HEALTHCARE SERVICES GROUP, INC., a Pennsylvania Corporation, Plaintiff and Appellant,**

v.

**UTAH DEPARTMENT OF HEALTH, a Utah Governmental Agency, Defendant and Appellee.**

No. 990669.

Supreme Court of Utah.

Jan. 11, 2002.

Robert B. Lochhead, Mark A. Wagner, Salt Lake City, Paul J. Brenman, Virginia Lynn Hogben, Philadelphia, PA, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Jean P. Hendrickson, Asst. Att'y Gen., Frank D. Mylar, Salt Lake City, for defendant.

DURHAM, Justice:

¶ 1 Plaintiff Healthcare Services Group, Inc. ("HSG"), appeals the district court's order granting defendant Utah Department of Health's (the "Department") motion for judgment on the pleadings.[1] The district court held (1) HSG's breach of contract claim was barred by article VI, section 29 of the Utah Constitution, the statute of frauds, and for lack of consideration,[2] and (2) HSG's conversion claim was barred by the Utah Governmental Immunity Act. We reverse.

## BACKGROUND

¶ 2 HSG is a provider of laundry and housekeeping services to long-term health-care facilities, including nursing homes. HSG's breach of contract and conversion claims stem from two separate incidents involving the Department.

¶ 3 Because we are "reviewing a grant of a motion for judgment on the pleadings, this court accepts the factual allegations in the complaint as true; we then consider such allegations 'and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff.'" *Arndt v. First Interstate Bank of Utah, N.A.,* 1999 UT 91, ¶ 2, 991 P.2d 584 (quoting *Golding v. Ashley Cent. Irr. Co.,* 793 P.2d 897, 898 (Utah 1990)). "'We affirm the grant of such motion only if, as a matter of law, the plaintiff could not recover under the facts alleged.'" *Id.* We recite the facts accordingly.

## I. BREACH OF CONTRACT

¶ 4 HSG's breach of contract claim arises from an alleged promise by the Department to pay HSG for services rendered at the Rosewood Terrace Care Center (the "Rosewood"). On or about February 2, 1998, in response to substandard conditions at Rosewood, the Department took over management of Rosewood and appointed its employee, Dennis McFall, as temporary manager of Rosewood. At the time the Department took over Rosewood, Provider Management Services, Inc. ("Provider"), owed HSG a total of $110,346.68 in past-due amounts for services previously provided at Rosewood. According

---

1. HSG's complaint contained three claims: breach of contract, quantum meruit, and conversion. On appeal, HSG has not addressed its claim for quantum meruit, and therefore that claim is waived.

2. In its motion, which was granted by the district court, the Department specified that its defense under the Utah Governmental Immunity Act applied only to HSG's conversion claim. The remaining defenses (article VI, section 29 of the Utah Constitution, the statute of frauds, and lack of consideration) are not applicable to a claim for conversion. We address the claims accordingly.

to HSG's complaint, "[t]o induce HSG to continue providing its services, Dennis McFall, the manager appointed by the Department to run and wind down operations at Rosewood, promised Mike Harder, Vice President of HSG, that the Department would pay HSG for all past-due amounts owed to HSG for services provided at Rosewood and pay HSG for future services as well." HSG further alleges that "[i]n reliance on the promise made by McFall, HSG continued to provide its services at Rosewood until the facility closing on February 23, 1998." HSG claims that this exchange resulted in an enforceable contract, which it partially performed and which the Department breached by failing to pay HSG for the past-due amounts for services rendered before the Department's takeover and by refusing to pay for services provided at Rosewood after the Department's takeover. Therefore, HSG claims the Department is liable for breach of contract.

## II.  CONVERSION

¶ 5  HSG's conversion claim against the Department stems from HSG's contractual relationship with Provider, which operated two Utah nursing homes, the Rosewood and the Ogden Care Center ("Ogden Center"). In 1989, HSG and Provider entered into contracts in which HSG agreed to provide its services to both Rosewood and Ogden Center.

¶ 6  By January 1993, Provider was indebted to HSG for services rendered at both facilities.  On or about January 15, 1993, HSG and Provider entered into a security agreement, in which HSG obtained a security interest in all of the accounts and receivables, including Medicaid receivables, and all other equipment and property of Provider.  On September 15, 1993, HSG perfected its security interest by filing a UCC–1 financing statement with the state of Utah. Provider failed to pay HSG, however, and HSG subsequently obtained a default judgment against Provider in the amount of $215,056.63.

¶ 7  In 1995 and 1996, before the entry of the default judgment, the federal Health Care Financing Administration ("HCFA") imposed civil monetary penalties in excess of $350,000 against Provider for violations of federal law at Rosewood and/or Ogden Center.  At the request of HCFA, the Department withheld Medicaid reimbursement payments due Provider and diverted the Medicaid payments to HCFA to satisfy the civil penalties against Provider.  HSG alleges that the Department took these actions without giving HSG notice or a hearing, and without regard to HSG's prior perfected security interest in Provider's receivables.

¶ 8  HSG now claims that its perfected security interest in Medicaid receivables, filed in September 1993, had priority over HCFA's claims against Provider.  Therefore, HSG alleges that the Department's conduct with regard to Provider's Medicaid receivables amounts to tortious conversion.  HSG contends that all amounts withheld by the Department should be turned over to HSG.

## ANALYSIS

## I.  BREACH OF CONTRACT

¶ 9  With respect to HSG's breach of contract claim, the district court held it was barred by article VI, section 29 of the Utah Constitution, the statute of frauds, and the defense of lack of consideration.  HSG argues each of these rulings is erroneous.  We address each in turn.

### A.  Article VI, section 29 of the Utah Constitution

¶ 10  Article VI, section 29 of the Utah Constitution is "aimed at preventing government from ... using public assets for private purposes."  *Salt Lake County Comm'n v. Short*, 1999 UT 73, ¶ 31, 985 P.2d 899.  It provides:

> The Legislature may not authorize the State, or any county, city, town, school district, or other political subdivision of the State to *lend its credit or subscribe to stock or bonds in aid of* any railroad, telegraph or other *private individual or corporate enterprise or undertaking,* except as provided in Article X, Section 5.

Utah Const. art. VI, § 29 (emphasis added). Accordingly, for this constitutional prohibition to apply and bar state aid to a private

business, there must be a "lending of credit" or "subscription of stock or bonds" by the state or a political subdivision, *and* the latter must be "in aid of ... [a] private individual or corporate enterprise or undertaking." *Id.* None of these elements is met in this case.

¶ 11 A lending of credit is prohibited by article VI, section 29, 1F the state acts as "a surety or guarantor of another's debts." *Utah Tech. Fin. Corp. v. Wilkinson*, 723 P.2d 406, 412 (Utah 1986). The purpose of this prohibition is to protect the state from mortgaging public assets or funds to benefit private business. *Id.* at 410. In addition, whether a lending of credit or stock or bond is in aid of private business depends on the state's purpose in participating in the transaction. *Utah State Land Bd. v. Utah State Fin. Comm'n*, 12 Utah 2d 265, 267, 365 P.2d 213, 214 (1961). As we explained in *Utah State Land Board,*

> When the underlying and activating purpose of the transaction and the financial obligation incurred are for the State's benefit, there is no lending of its credit though it may have expended funds or incurred an obligation that benefits another. Merely because the State incurs an indebtedness or expends its funds for its benefit and others may incidentally profit thereby does not bring the transaction within the letter or the spirit of the 'credit clause' prohibition.

*Id.* at 215 (citations omitted). Accordingly, where the state's purpose is to contract or invest for its own benefit, article VI, section 29 does not apply, even where there is a lending of the state's credit or purchase of stock. *Id.* In fact, the prohibition only applies where the state's obligation is an indirect and contingent secondary liability, not where the state is the party primarily liable. *Utah Tech. Fin. Corp.*, 723 P.2d at 411 (explaining that this type of constitutional prohibition was directed at "the delusion of suretyship" that "the primary debtor will pay and [the surety] will never be required to perform" thus forbidding "the incurring of obligations by the indirect method of secondary liability ... [and not] the creation of primary indebtedness for any purpose whatever").

¶ 12 Here, the Department neither guaranteed Provider's credit nor agreed to pay Provider's obligations. Rather, it agreed to pay Provider's past-due balance owing to HSG for its own benefit, in order to obtain HSG's continuing services. Under this agreement, the Department was directly and primarily liable to HSG for the past-due balance. Therefore, the agreement does not constitute the kind of secondary guarantee of debt prohibited as lending of credit under article VI, section 29. *Id.* at 410–11. Furthermore, the agreement was not made "in aid of any ... private individual or corporate enterprise or undertaking." Utah Const. art. VI, § 29. The Department's agreement to pay HSG the past-due balance for its services at Rosewood was not an extension of financial aid to Provider or HSG. Instead, the Department entered the agreement in order to obtain needed services for patients in the nursing home it was operating—a legitimate and proper purpose for the State's benefit. Because "the underlying and activating purpose of the transaction and the financial obligation incurred are for the State's benefit, there is no lending of its credit though it may have expended its funds or incurred an obligation that benefits another." *Utah State Land Bd.*, 365 P.2d at 215. Accordingly, the policy of article VI, section 29 does not apply.

### B. Statute of Frauds

¶ 13 HSG's breach of contract claim is based on McFall's oral promise to pay HSG Provider's past-due balance and HSG's existing rate for future services. The district court concluded that the statute of frauds, specifically section 25–5–4(2) of the Utah Code, applied to bar this claim.

¶ 14 This court has recognized that "agreements are enforceable even though there is neither a written memorialization of that agreement nor the signatures of the parties, unless specifically required by the statute of frauds." *Murray v. State*, 737 P.2d 1000, 1001 (Utah 1987). Regarding promises to pay another's debt, section 25–5–6 of the Utah Code specifically provides:

> A promise to answer for the obligation of another ... is deemed an original obligation of the promisor and need not be in

writing: . . . (2)[w]here the creditor parts with value or enters an obligation . . . under circumstances such as to render the party making the promise the principal debtor. . . .

Utah Code Ann. § 25–5–6(2)(Supp.2001). Here HSG alleges that the Department, as the operator of Rosewood, undertook the obligation of paying Provider's past-due balance as the original and sole promisor to further its own interest in maintaining necessary services for the Department's operation of Rosewood; Provider was not a party to the agreement.

■ ¶ 15 Nevertheless, the district court relied on section 25–5–4(2) of the Utah Code, which states that "every promise to answer for the debt, default or miscarriage of another" is "void unless the agreement, or some note or memorandum of the agreement, is in writing, signed by the party to be charged with the agreement." Utah Code Ann. § 25–5–4(2)(Supp.2001). With respect to this section of the statute of frauds, the Tenth Circuit has held:

> Section 25–5–4 [of the Utah Code] . . . has no application to an original undertaking of a promisor. . . . [I]f the predominant purpose of the promisor is to subserve or further his own interest rather than merely to underwrite the debt of another, it is an original undertaking not within the statute of frauds although it may be in form of a promise to pay or discharge the debt of another and although its performance may incidentally have the effect of extinguishing the liability of another.

*Nephi Processing Plant v. W. Coop. Hatcheries,* 242 F.2d 567, 571 (10th Cir.1957). We agree. Where a promise is an original undertaking of the promisor for its own benefit, section 25–5–4(2) of the Utah Code does not apply—even when it is a promise to pay another's obligation. *See W.W. & W.B. Gardner, Inc. v. Pappas,* 24 Utah 2d 264, 266, 470 P.2d 252, 253 (1970)(holding that section 25–5–4(2) applied only to collateral promises, not to original promises of promisor).

■ ¶ 16 Determining whether there is an original promise (not subject to the statute of frauds) or a collateral promise to answer for the debt of another (unenforceable in the absence of a writing), requires an assessment of the intention of the parties. *Id.* This of course raises questions of fact to be determined from the words of the promise, the situation of the parties, and the surrounding circumstances. *Id.* Given the circumstances here, where there was no discovery or evidence on these matters, the district court erred in dismissing the breach of contract claim based on its interpretation of section 25–5–4(2).

### C. Lack of Consideration

■ ¶ 17 The trial court also found the agreement unenforceable for lack of consideration. *See e.g., Aquagen Int'l, Inc. v. Calrae Trust,* 972 P.2d 411, 413 (Utah 1998). Consideration is present when there is an act or promise given in exchange for the other party's promise. *Id.* Thus, "there is consideration whenever a promisor receives a benefit or where [a] promisee suffers a detriment, however slight." *Gasser v. Horne,* 557 P.2d 154, 155 (Utah 1976).

¶ 18 The Department argues it did not benefit from HSG's past services at Rosewood or the Ogden Center because most of the services had been performed prior to the Department's involvement with the facilities. However, it is undisputed that substandard conditions at Rosewood caused HCFA to order the Department to install a temporary manager at Rosewood, namely McFall. In its answer to HSG's complaint, the Department acknowledges that "[McFall] had authority to hire, fire, and reassign staff and obligate funds on behalf of [Provider] as necessary to adequately care for residents."

¶ 19 HSG claims it agreed to continue providing services at Rosewood during this time specifically in exchange for the Department's promise to pay Provider's past-due balance in addition to paying for HSG's future services. Relying on this promise, HSG alleges it provided laundry services at Rosewood until the Department closed the facility down approximately three weeks later. Undoubtedly, given the circumstances surrounding the Department's involvement, it benefitted, even if slightly, from HSG's con-

tinued services at Rosewood. In addition, HSG incurred the detriment of providing those services. Thus, HSG's complaint alleges sufficient facts to support the presence of consideration.

## II. CONVERSION [3]

¶ 20 The district court dismissed HSG's conversion claim on the ground that it was barred by the Utah Governmental Immunity Act (the "Act"), Utah Code Ann. §§ 63–30–1–38 (Supp.2001). The Act provides that "[e]xcept as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function...." Utah Code Ann. § 63–30–3 (Supp.2001). The Act further provides that this immunity is waived in specific types of cases. *See* §§ 63–30–5 to –10.6. If HSG's conversion claim falls within a situation covered by a waiver, and if it is not subject to an exception to the waiver, HSG may bring an action against the Department. *See Hansen v. Salt Lake County*, 794 P.2d 838, 842 (Utah 1990) ("Absolute immunity exist[s] only for activities not the subject of any waiver.").

¶ 21 HSG contends its conversion claim falls within two separate waivers of immunity: (1) section 63–30–6, for actions involving property; and (2) section 63–30–10, for actions involving injury caused by the negligent act or omission of state employees. We will address each section separately.

### A. Section 63–30–6

¶ 22 Section 63–30–6 provides:

Immunity from suit of all governmental entities is waived for the *recovery of any property real or personal* or for the possession thereof or to quiet title thereto, or to foreclose mortgages or other liens thereon or to determine any adverse claim thereon, or secure any adjudication touching any mortgage or *other lien said entity may have or claim* on the property involved.

Utah Code Ann. § 63–30–6 (Supp.2001)(emphasis added). HSG alleges that its conversion claim seeks to recover personal property, namely, Provider's Medicaid receivables, in which HSG held a perfected security interest. Therefore, HSG alleges its claim is an action falling under this section.

¶ 23 The Department argues that HSG's conversion claim does not fall under this section because HSG has in effect "transformed" its claim from conversion to one for recovery of property to qualify for the statutory waiver. The Department cites to *Bullock v. Utah Department of Transportation*, 966 P.2d 1215 (Utah Ct.App.1998), contending that "[a] plaintiff's claim should be refused when it is drafted in an attempt to 'evade [the Act's] statutory categories by recharacterizing the supposed cause of the injury.'" *Id.* at 1217 (citations omitted). Although the Department's contention is correct in the abstract, the principle is not applicable to the instant case. In *Bullock*, the plaintiff's cause of action arose from a sale to the State of real property belonging to a partnership to which plaintiff belonged. *See id.* at 1216–17. Although plaintiff accepted payment from the sale, he later brought suit against the State alleging the sale was improper. *See id.* Because plaintiff did not file within the one-year statute of limitations under the Governmental Immunity Act, he attempted to recharacterize his claim as one for breach of contract under section 63–30–5, which would be exempt from the one-year statute of limitations. In *Bullock*, the court noted that plaintiff was not in fact arguing that the State injured him by breaching a contract to which he was a party; rather, plaintiff claimed that the sale was invalid because it violated the partnership agreement between himself and his other partners. The court concluded that "[t]he core of appellant's claim against the State is not that the State violated his contractual rights but that the State is in wrongful possession of appellant's property." *Id.* at 1218. Therefore, the court of appeals held that plaintiff's claim did not

---

**3.** Conversion is "an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Allred v. Hinkley*, 8 Utah 2d 73, 76, 328 P.2d 726, 728 (1958).

fall under section 63–30–5 and was not exempt from the one-year limitation.

¶ 24 Here, HSG's claim for conversion can properly be considered a claim for recovery of property. HSG's claim that section 63–30–6 applies to waive immunity still fails, however, because the State is not in possession of the property HSG seeks to recover, nor does the State hold a lien on the property.

¶ 25 This court has held that section 63–30–6 "waives immunity only for actions to recover property, quiet title, clear title, or resolve disputes over mortgages or liens *held by a governmental entity.*" *Hansen,* 794 P.2d at 847 (emphasis added). In *Hansen,* we held that where the plaintiff alleged the State had destroyed his property, immunity was not waived under section 63–30–6. *See id.* The *Hansen* plaintiff had "not alleged that [the State] is holding his property without right." *Id.* Likewise, in this case, HSG has not alleged that the Department is holding Provider's Medicaid receivables without right. Instead, HSG claims that the Department wrongly paid Provider's receivables to HCFA to satisfy federal civil penalties against Provider. HSG further claims that because HSG held a lien on the Medicaid receivables, the section waives immunity in this case. However, we have held that the waiver is applicable to "disputes over mortgages or liens held by a governmental entity," *id.*, not to disputes over liens held by a plaintiff, as in this case. Therefore, we conclude that where the State has remitted Medicaid receivables to the federal government in payment of civil penalties against the provider of Medicaid services, the State does not waive immunity from suit under section

63–30–6, even if the plaintiff holds a lien on the receivables.[4]

*B. Section 63–30–10*

¶ 26 Section 63–30–10 provides:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment. . . .

Utah Code Ann. § 63–30–10 (Supp.2001). Under this section, immunity is waived unless the injury results from statutory exceptions to waiver. On appeal, the Department argues section 63–30–10 does not waive immunity because conversion is an intentional tort. This argument fails; "[conversion] does not require an intentional wrongdoing, but only an intentional interference with the true owner's rights to such chattel." *Allred,* 8 Utah 2d at 77, 328 P.2d at 728.

¶ 27 The district court concluded that HSG's conversion claim fell within four of the exceptions to waiver under section 63–30–10:[5]

(1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused; . . .

(3) the issuance, denial, suspension, or revocation of or by the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization;

(4) a failure to make an inspection or by making an inadequate or negligent inspection; . . .

(6) a misrepresentation by an employee whether or not it is negligent or intentional; . . . .

---

4. In its reply brief, the Department introduces additional arguments that HSG's claim is barred by failure to serve the Department with actual notification of its security interest and that HSG's security interest is barred by federal law restrictions on assignment of medicaid payments. We do not reach the merits of those arguments as they were raised for the first time on appeal and are not properly before us. In addition, we note that the district court specified in its ruling that it granted the Department's motion, "except with respect to the notice and service requirements under the Governmental Immunity Act."

5. In its brief, HSG notes that the exceptions argued by the Department below, on which the district court based its ruling, are subsections (1), (2), (3), (4), and (6). On review of the record, however, we conclude that the only exceptions raised by the Department below are those in subsections (1), (3), (4), and (6). Therefore, arguments relating to subsection (2) are not properly before us, and we do not address that subsection.

Utah Code Ann. § 63–30–10 (Supp.2001). We address each exception in turn.

¶ 28 The discretionary function exception is limited to broad policy decisions "requiring evaluation of basic governmental policy matters," not operational and ministerial acts. *Hansen*, 794 P.2d at 846. The Department argues it "was performing a governmental function and discretionary function in administering and supervising Medicare/Medicaid providers." However, HSG's conversion claim is based on the Department's improper payment of funds in which HSG had a perfected security interest to a party whose rights were subordinate to HSG's, an operational act, not a discretionary function shielded from liability.

¶ 29 Nonetheless, the Department claims it is shielded from liability because HSG's conversion claim "arise[s] out of [its] involvement in regulating and licensing Rosewood." We disagree. This claim has nothing to do with the "issuance, denial, suspension or revocation of . . . any permit, license, certificate, approval, order or similar authorization." Utah Code Ann. § 63–30–10(3)(Supp.2001). Rather, the claim is based on a perfected security interest and seeks recovery of funds wrongfully paid to another party. Furthermore, subsection four of section 63–30–10 applies only where the claim involves "a failure to make an inspection or . . . an inadequate or negligent inspection." *Id.* § 63–30–10(4). Under the circumstances, we fail to see any application of this waiver exception to the facts of this case.

¶ 30 Finally, the Department argues the claim is barred "to the extent . . . that a state employee misrepresented himself or interfered with contract rights . . . ." However, HSG's conversion claim is not based on negligent misrepresentations by a Department employee. The claim is based on the Department's payments to HCFA of Medicaid reimbursements in which HSG had a security interest. Thus, this exception is also inapplicable. Based on the foregoing, we conclude that none of the waiver exceptions relied upon by the district court are applicable, and that HSG's conversion claim should not have been dismissed.

**CONCLUSION**

¶ 31 HSG's contract claim is not barred by article VI, section 29 of the Utah Constitution, nor was the State entitled to judgment on the pleadings on its defense of lack of consideration. Whether section 25–5–4(2) applies to bar this claim depends on factual questions to be determined by the fact-finder. Although section 63–30–6 does not waive governmental immunity for HSG's conversion claim, section 63–30–10 does, and none of the exceptions relied upon by the district court apply. Accordingly, we reverse and remand.

¶ 32 Associate Chief Justice RUSSON, Justice WILKINS, and Judge HARDING, Jr. concur in Justice DURHAM's opinion.

¶ 33 Chief Justice HOWE concurs in the result.

¶ 34 Having disqualified himself, Justice DURRANT does not participate herein; District Court Judge RAY M. HARDING, JR. sat.