In re Donald E. ARMSTRONG, Debtor.

Donald E. Armstrong, Appellant,

v.

Kenneth A. Rushton, Trustee; and
Steven R. Bailey, Trustee,
Appellees.

BAP No. UT–02–012.
Bankruptcy No. 00B–26592.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

May 9, 2003.

Donald E. Armstrong, pro se.

Lon A. Jenkins (Penrod W. Keith with him on the brief), of LeBoeuf, Lamb, Greene & MacRae, L.L.P., Salt Lake City, UT, for Kenneth A. Rushton.

Duane H. Gillman (R. Mont McDowell with him on the brief), of McDowell & Gillman, P.C., Salt Lake City, UT, for Steven R. Bailey.

Before McFEELEY, Chief Judge, BOHANON, and CORDOVA[1], Bankruptcy Judges.

## OPINION

MCFEELEY, Chief Judge.

Donald E. Armstrong ("Armstrong") appeals an Order of the United States Bankruptcy Court for the District of Utah that temporarily allowed a claim by Appellee Steven R. Bailey, Chapter 7 Trustee for Willow Brook Cottages, LLC ("Bailey"), which permitted Bailey to vote on Armstrong's Chapter 11 Plan. Armstrong argues that the Estimation Order erred in calculating the disputed claim, violated the due process rights of some interested parties, and was invalid because of bias. We affirm.

## I. *Background*

On March 19, 1998, Willow Brook Cottages, L.L.C. ("Willow Brook") conveyed to Armstrong, the manager of Willow Brook, three parcels of real estate, Lots 12, 13, and 25 (hereinafter, when referred to collectively, "the Lots"). Also on that date, Armstrong recorded a Warranty Deed ("Warranty Deed") in his name in

---

1. The Honorable Donald E. Cordova, Chief Bankruptcy Judge for the District of Colorado, heard oral argument in this appeal but passed away February 16, 2003. Prior to his death, he had considered this matter fully and participated in the panel's conference and resulting decision.

Utah, and Armstrong executed a Trust Deed Note ("Note") in favor of Willow Brook in the amount of $150,000. The Note was secured by a Trust Deed on Lot 12 ("Trust Deed"), which was recorded with the Summit County, Utah Recorder on April 15, 1998. The Note due date was March 18, 1999.

Subsequently, Armstrong sold Lot 13, and on April 29, 1998, Willow Brook received a payment of $1,017.95 on the Note from the proceeds of the sale of Lot 13. The following month, from proceeds of the same sale, Willow Brook received $61,227.82 in payment on the Note.

On August 20, 1998, Willow Brook was placed in an involuntary Chapter 11 bankruptcy case, which subsequently converted to a case under Chapter 7. Bailey was appointed the Chapter 11 trustee for Willow Brook, in September 1998, and later became the Chapter 7 trustee.[2]

Bailey caused a Notice of Default on the Trust Deed to be recorded and served on Armstrong in July 1999, and thereafter, initiated foreclosure proceedings. In November 1999, Lot 12 was sold at a trustee's sale. Bailey credit bid at the auction, and on December 7, 1999, a Trustee's Deed was executed and recorded in favor of Willow Brook.

On March 10, 2000, Armstrong filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of California. Because that court found that venue was not proper in California, Armstrong's case was transferred to the Utah bankruptcy court. Creditors moved for the removal of Armstrong as a debtor-in-possession, for among other things, impropriety in the administration of the estate. In September 2000, Appellee Kenneth A. Rushton ("Rushton") was appointed the Chapter 11 trustee for Armstrong's case.

On March 22, 2000, Bailey filed a claim in the Armstrong case for $150,847.60, representing the face amount of the Note including attorneys' fees and interest dating from December 1, 1999, until the filing of Armstrong's Chapter 11 case ("Willow Brook Claim"). Armstrong objected to the Willow Brook Claim, alleging that there was no consideration for it. Rushton did not object to the Willow Brook Claim.

Bailey filed a motion seeking to have the Willow Brook Claim estimated so that he could vote on the Trustee's Plan in the Armstrong case ("Estimation Motion"). Armstrong objected to the Estimation Motion. Rushton did not object. On January 15, 2002, the bankruptcy court held a hearing on the Estimation Motion. Armstrong was in attendance.

At the conclusion of the hearing, the bankruptcy court orally estimated the Willow Brook Claim as $81,997.29 for the purpose of voting on the Trustee's Plan. The Willow Brook Claim was classified in Class 4 of the Trustee's Plan, which contained Allowed General Unsecured Claims, and based on the ballot previously filed by Bailey was counted as a vote in favor of confirmation.[3] On February 6, 2002, the bankruptcy court entered an Order Esti-

---

**2.** Armstrong filed a claim in Willow Brook's case. Willow Brook objected. Subsequently, on October 29, 1999, the bankruptcy court entered an order sustaining the objection and completely disallowing Armstrong's claim.

**3.** Also included in Class 4 was a temporarily allowed unsecured claim held by Steppes Apartments Ltd. This claim was based on

causes of action held by Steppes Apartments, Ltd. ("Steppes") against Armstrong ("Claim 27") and a claim based on a settlement agreement entered into between Rushton and Steppes ("Steppes Settlement"). The bankruptcy court heard Steppes's motion to temporarily allow its claim and its Motion for Approval of the Steppes Settlement as part of the confirmation hearings beginning on December 20,

mating Claim Number 1, Claim of Steven R. Bailey, Trustee of Willow Brook Cottages, L.L.C. ("Estimation Order").

Rushton filed the Trustee's Second Revised Plan of Reorganization Dated November 19, 2001 (Trustee's Plan). The Trustee's Plan was circulated to creditors for voting along with a disclosure statement approved by the court pursuant to § 1125(a).

On January 31, 2002, the bankruptcy court entered a Confirmation Order entitled Findings of Fact, Conclusions of Law and Order Confirming and Approving Trustee's Second Revised Plan of Reorganization Dated November 19, 2001 and Granting Related Motion on January 31, 2002 ("Confirmation Order"). In the Confirmation Order, the bankruptcy court found that Class 4 had accepted the Trustee's Plan [4] and that, alternatively, the Trustee's Plan could be confirmed over the dissent of Class 4 because the Trustee's Plan satisfied the "cram down" provisions

---

2002. The bankruptcy court temporarily allowed only that part of Steppes's claim as delineated in the Steppes Settlement ("Steppes's Temporary Allowance"). Steppes's Temporary Allowance Claim was split into two classes. The unsecured portion of Steppes's claim was classified in Class 4 of the Trustee's Plan and based on a ballot previously filed by Steppes was counted as a vote in favor of confirmation of the Trustee's Plan. Steppes's secured claim was classified in Class 2A and was also counted as a vote in favor of the Trustee's Plan. The Steppes's Temporary Allowance is the subject of another appeal proceeding before this court, BAP Number UT–02–007.

4. Class 4 was comprised of unsecured claims totaling approximately $1,694,034.09. In a Trustee Voting Rights Motion ("Voting Motion"), Bailey asked the bankruptcy court to determine who could vote certain disputed claims. The Voting Motion was heard, and the bankruptcy court made findings of fact and conclusions of law on the record on January 15, 2002, concluding that Bailey held 70% of the disputed claims and Armstrong held 30% of the disputed claims. Later, Armstrong purported to vote the full amount of each of the disputed Class 4 Claims as rejecting claims while Bailey voted whatever portion of the disputed Class 4 Claims he held. In voting the Disputed Class 4 Claims, Bailey asserted his right as the majority owner of the claims to vote the full amount as accepting the Trustee's Plan. In the Confirmation Order, the bankruptcy court found as follows:

> Whether the Trustee votes the full amount of the Disputed Class 4 Claims or 70% of them, or whether each of these claims is treated as two claims for voting purposes to be voted by the Trustee and the Debtor, Class 4 has voted to accept the Plan because creditors who hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by such creditors have voted to accept the Plan. 11 U.S.C. § 1126(c).

Confirmation Order at 6, *in* Rushton's App. at 52. In a footnote, the bankruptcy court further explained:

> If the Trustee is permitted to vote the full amount of the Disputed Class 4 Claims, then 8 Claims voting in that Class voted to accept the Plan and 4 voted to reject, with claims totaling $1,604,25[9].22 voting to accept and $89,774.87 voting to reject the Plan. If the Trustee is permitted to vote 70% of each Disputed Class 4 Claim and the Debtor 30% (with the Disputed Class 4 Claims being split for purposes both of number of claims voting and for amounts voted, then the voting in Class 4 is 7.1 votes to accept the Plan and 4.9 votes to reject the Plan, with claim amounts totalling [sic] $1,569,024.76 in favor of the Plan and $125,009.33 against the Plan.) If each of the Disputed Class 4 Claims is split so that each would be counted as two votes in Class 4, but the Trustee would vote 70% of each Disputed Class 4 Claim and the Debtor 30% of each Disputed Class 4 Claim, the result would be 8 votes to accept the Plan, 4 votes to reject the Plan, with claims totaling $1,569,024.76 in favor of the Plan and $125,009.33 against the Plan. In each of these three alternative scenarios, the requirements of Section 1126(d) for acceptance of the Plan are met with respect to Class 4.

*Id.* at 6–7 n. 3, *in* Rushton's App. at 52–53.

of 1129(b) with respect to Class 4.[5] The bankruptcy judge also found that both other impaired Classes, 2A and 2C, had accepted the Trustee's Plan because there was only one creditor in each Class, and both voted to accept the Trustee's Plan. Class 2C was the impaired claim of Zions Bank.

Armstrong appealed the Confirmation Order to this Court. He also filed a motion asking the bankruptcy court to enlarge the time for filing a notice of appeal of the Confirmation Order. The bankruptcy court denied that motion, and he appealed. Both appeals were dismissed by panels of this Court, see BAP Nos. UT–02–011, UT–02–038, and have been further appealed to the Tenth Circuit.

Armstrong timely appealed the Estimation Order.

## II. *Standard of Review*

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo* ), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); see Fed. R. Bankr.P. 8013. *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision. *Salve Regina College v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

A factual finding is "clearly erroneous" when " 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.' " *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir.1990) (quoting *Le-Maire v. United States,* 826 F.2d 949, 953 (10th Cir.1987)). In reviewing findings of fact, we are compelled to give due regard to the opportunity of the bankruptcy court to judge the credibility of witnesses. Fed. R. Bankr.P. 8013.

A judge's decision to temporarily allow a claim under Federal Rule of Bankruptcy Procedure 3018(a) is reviewed for abuse of discretion. *See In re Marin Town Ctr.,* 142 B.R. 374, 379 (N.D.Cal. 1992). "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.' " *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman,* 926 F.2d 1539, 1553–54 (10th Cir.1991) (further quotation omitted)). As with the clearly erroneous standard, when applying the abuse of discretion standard, deference is given to the bankruptcy court " 'because of its first-hand ability to view the witness or evidence and assess credibility and probative value.' " *Id.* (quoting *McEwen,* 926 F.2d at 1553–54).

## III. *Discussion*

Armstrong argues that the bankruptcy court erred when it temporarily allowed the Willow Brook Claim in the Estimation Order because it was unsupported by the

---

**5.** The bankruptcy court also found that Classes 2B, 2D, 2E, and 3A were also deemed to have accepted the Trustee's Plan under the holding of *Heins v. Ruti–Sweetwater, Inc. (In re Ruti–Sweetwater, Inc.),* 836 F.2d 1263, 1265–67 (10th Cir.1988), which provides that a nonvoting, nonobjecting judgment lien creditor is deemed to have accepted the plan. Alternatively, the bankruptcy court found that the Trustee's Plan could be confirmed under the cramdown provisions of § 1129(b).

evidence. Additionally, Armstrong argues that the Estimation Order violated his due process rights because the bankruptcy court was prejudiced against him and because the Trustee's Plan affects the rights of the Donald E. Armstrong Family Trust, the Donald E. Armstrong Charitable Remainder Unitrust (hereinafter, "Trusts") and the beneficiaries of the Trusts who were not properly noticed.[6]

Rushton counters that this Court has no jurisdiction over this appeal because it is an impermissible collateral attack on the Confirmation Order. Rushton further argues that this appeal is moot because there is no relief that the bankruptcy court can offer in the absence of a timely appeal of the Confirmation Order. Alternatively, Bailey argues that the Estimation Order was supported by the evidence.

■ Before a court may reach the merits of a case, it must satisfy itself that it has jurisdiction to hear an appeal. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). The bankruptcy court's order is a final order subject to appeal under 28 U.S.C. § 158(a)(1). *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Armstrong timely filed his notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8002. All parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the District of Utah. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001. However, two jurisdictional matters remain before us: whether the appeal is an improper attempt to appeal an ancillary order; and whether the appeal is improperly before us because it is moot.[7]

■ First, Rushton argues that this appeal is not properly before us because it is really a collateral attack on the Confirmation Order. To support this argument, Rushton indicates a statement in the Confirmation Order that the bankruptcy court has previously orally estimated Willow Brook's Claim. Therefore, Rushton concludes, the terms of the Estimation Order were incorporated into the Confirmation Order and cannot be changed in the absence of an appeal of the Confirmation Order. This argument fails. A reference to a previous order cannot turn two separate orders into one. While Rushton may be correct in asserting that one of the reasons for this appeal is to overturn the Confirmation Order, the purpose behind an appeal cannot alone defeat it. The Estimation Order was a separate order from the Confirmation Order. Armstrong timely appealed it. We have the jurisdiction to consider it.

■ Second, Rushton argues that this appeal is not properly before us because it is moot. The Constitution authorizes federal courts to hear only "cases" or "contro-

---

6. The Donald E. Armstrong Family Trust, created in 1983, and the Donald E. Armstrong Charitable Remainder Unitrust, created in 1994, were formed by Armstrong. He is both the beneficiary and the trustee in the Trusts, and they are part of the Armstrong Estate. The Trusts are liable under a Texas Modified Judgment for $1,579,283.90 to Steppes Apartments and its principal John Feece.

7. Armstrong argues that this Court will not fairly consider the issues before us because we are biased and unfair and unable to rule against one of our peers. However, he offers no factual or legal support for this claim; we conclude that it has no merit. *See Bryce v. Episcopal Church in Diocese of Colo.*, 289 F.3d 648, 659–60 (10th Cir.2002) (finding "[t]he recusal statute should not be construed so broadly as to become presumptive or to require recusal based on unsubstantiated suggestions of personal bias or prejudice.").

versies." *See* U.S. Const., Art. III § 2, cl. 1. If there is no live case or controversy as mandated by the constitution then an appeal will be moot. *See Out of Line Sports, Inc. v. Rollerblade, Inc.,* 213 F.3d 500, 501 (10th Cir.2000). A controversy is no longer "live" if the reviewing court cannot render "any effectual relief whatever." *Church of Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)); *see also Egbert Dev. LLC. v Community First Nat'l Bank (In re Egbert Dev.),* 219 B.R. 903 (10th Cir. BAP 1998). A party must seek only that relief that is " 'capable of addressing the alleged harm.' " *National Advertising Co. v. City and County of Denver,* 912 F.2d 405, 411 (10th Cir.1990) (quoting *Blinder, Robinson & Co. v. United States Sec. & Exch. Comm'n,* 748 F.2d 1415, 1418 (10th Cir. 1984)). "It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " *Church of Scientology,* 506 U.S. at 12, 113 S.Ct. 447 (quoting *Mills,* 159 U.S. at 653, 16 S.Ct. 132).

 The appeal here focuses on an Estimation Order entered pursuant to the provisions of Federal Rules of Bankruptcy Procedure 3018(a). Pursuant to Rule 3018(a), a bankruptcy judge after notice and a hearing "may temporarily allow the claim or interest [of a creditor] in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr.P. 3018(a). A creditor may request the temporary allowance of a claim under one of the following non-exclusive circumstances: when an objection to the claim has been filed and "the objection was filed too late to be heard

prior to the confirmation hearing, when fully hearing the objection would delay administration of the case, or when the objection is frivolous or of questionable merit." *See* 9 *Collier on Bankruptcy* ¶ 3018.01[5] (Lawrence P. King ed., 15th ed.2003) (footnotes omitted); *In re Zolner,* 173 B.R. 629, 633 (Bankr.N.D.Ill.1994), *aff'd,* 249 B.R. 287 (N.D.Ill.2000). The policy behind temporarily allowing claims is to prevent possible abuse by plan proponents who might ensure acceptance of a plan by filing last minute objections to the claims of dissenting creditors. *Stone Hedge Properties v. Phoenix Capital Corp. (In re Stone Hedge Properties),* 191 B.R. 59, 64 (Bankr.M.D.Pa.1995); *see also* 9 *Collier on Bankruptcy* ¶ 3018.01[5]. Temporary allowance of a claim under Rule 3018(a) is not dispositive as the amount of the claim; it provides only limited voting authority to a creditor.

 There is no guidance in the Bankruptcy Code for courts as to how to determine whether to permit the temporary allowance of a claim; it is left to a court's discretion. *See Marin,* 142 B.R. at 379; 9 *Collier* ¶ 3018.01[5]. The Bankruptcy Code also offers no guidance on which party has the burden of proof in a Rule 3018(a) estimation proceeding. Some courts have placed the burden of proof on the claimant while other courts have placed it on the objector. *See, e.g., Zolner,* 173 B.R. at 633–36 (burden of proof is on the claimant); *Stone Hedge,* 191 B.R. at 64–65 (questioning whether burden of proof in a summary proceeding should be on the objector). Because a temporary allowance order only arises if there is an objection to a claim, we conclude that the burden of proof should be on the claimant to present sufficient evidence that it has a colorable claim capable of temporary evaluation.

■ The bankruptcy court temporarily allowed the Willow Brook Claim for voting purposes only. At the time this appeal was filed, the amount of Willow Brook's Claim had not been conclusively determined. Because the actual claim had yet to be determined, even if this Court were to find that the Estimation Order was entered in error, our ruling could have no effect on the bankruptcy court's order determining the Willow Brook Claim. Furthermore, reversal of the Estimation Order could not affect the Confirmation Order, a final order that was not timely appealed.

Armstrong argues [8] that the appeal is not moot because if there was no basis for temporarily allowing the claim, then the voting on the Trustee's Plan was tainted. That argument is not persuasive. First, we observe that even if we were to find that Class 4 were nonaccepting under § 1129(b), a plan may be confirmed if the plan is affirmatively accepted by at least one impaired class under § 1129(a)(10).[9] Here, the impaired Zions Bank in Class 2C

affirmatively accepted the Trustee's Plan. On that basis alone the Trustee's Plan could have been confirmed. Second,[10] the bankruptcy court found that the Trustee's Plan would have been approved even over the dissent of Class 4. In the Confirmation Order, the bankruptcy court found that had Class 4 voted against the Trustee's Plan, it could have been approved under the provisions of 11 U.S.C. § 1129(b).[11]

Section 1129(b) delineates what has been called the "cram down" provisions of the bankruptcy code. These provisions are so named because they provide that a plan may be confirmed over the dissent of a class if the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b). With respect to a class of unsecured claims, the statute further provides that the plan must offer each holder of such a claim property equivalent to the allowed amount of the claim as of the effective date of the plan or provide that any holder of a junior interest

8. On May 7, 2002, Armstrong filed a Motion for Waiver of 10th Cir. BAP L.R. 8009–1(b) and Fed. R. Bankr.P. 8009(b). It is not clear from which part of either rule Armstrong is seeking exemption. He did file a brief and appendix, and this Court has considered both. To the extent Armstrong seeks a waiver of the requirement of 10th Cir. BAP L.R. 8009–1(b)(3) that his appendix be consecutively paginated, such a waiver is granted. Otherwise, the motion is denied. Also, on July 28, 2002, Armstrong filed a Motion for Extension of Time to File Reply Brief and/or in the Alternative for the Court to Accept Armstrong's Reply Brief for Consideration in this Appeal. This motion is granted.

9. In pertinent part that statute provides:

(a) The court shall confirm a plan only if all of the following requirements are met:
. . . .
(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the

plan, determined without including any acceptance of the plan by any insider.
11 U.S.C. § 1129(a)(10).

10. Although there are no provisions in the Bankruptcy Code that directly provide for what would essentially be the nullification of Willow Brook's vote after a Confirmation Order has been entered, Federal Rule of Bankruptcy Procedure 3006 provides that a creditor may withdraw a claim after notice and hearing. Thereafter, under Rule 3006, an "authorized withdrawal of a claim shall constitute withdrawal of any related acceptance or rejection of a plan." So by analogy, on this point, we are proceeding under the assumption that if the Estimation Order had not been entered or were invalid, Willow Brook's unsecured claim could not have been voted in Class 4.

11. All future statutory references are to Title 11 of the Bankruptcy Code unless otherwise noted.

or claim will not receive or retain any property. 11 U.S.C. § 1129(b)(2)(B)(i), (ii). In this case, the bankruptcy court found that the plan was fair, equitable, and did not discriminate, and there were no junior lienholders. The bankruptcy court concluded that under § 1129(b), the plan would have been confirmed even had Class 4 rejected the Trustee's Plan.[12]

Armstrong argues that the Trustee's Plan did not meet the provisions of § 1129(b) because the Trustee's Plan falsely promised to pay all of the unsecured creditors' debt. He bases this argument on his allegations that a number of "unknown" administrative claims were presented following confirmation of the Trustee's Plan. Because these administrative claims will have to be paid under the provisions of the Bankruptcy Code, and thereby deplete the funds available to pay the unsecured creditors, Armstrong concludes that the Trustee's Plan was confirmed erroneously. That argument has no merit.

Section 1129(b) does not require full payment to unsecured creditors before a plan may be approved pursuant to its provisions.[13] Most important, the number of administrative claims presented following a plan confirmation has no bearing on whether the provisions of § 1129(b) were accurately administered or whether a temporary allowance order was correctly entered. Any false allegations regarding the amount of money with which to fund a plan goes to the validity of the Confirmation Order and not to the validity of the Estimation Order. Finally, even were we were to find the voting tainted, in the absence of a timely appeal of the Confirmation Order, there is no relief we could fashion that could address the alleged harm.[14]

Even if we were to accept Armstrong's claim that this appeal is not moot, there is no evidence in the record that the bankruptcy court abused its discretion when it allowed the Willow Brook Claim. Armstrong argues that bankruptcy court erred because it refused to consider extrinsic evidence that the Willow Brook Claim was invalid.[15] He argues that the Warranty

---

12. Moreover, we note that there is evidence that even had the bankruptcy court declined to temporarily approve the Willow Brook Claim, Class 4 would still have accepted the Trustee's Plan because there were not enough rejecting votes in number or amount of claim.

13. In fact, § 1129(b) contemplates the treatment of impaired classes, and by definition, an impaired class is one whose rights are altered under the plan. In pertinent part, § 1124 provides:

Except as provided in section 1123(a)(4) if this title, a class of claims or interest is impaired under a plan unless, with respect to each claim or interests of such class, the plan—
(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitled the holder of such claim or interest. . . .
11 U.S.C. § 1124(1).

14. It is possible that even had an appeal of the Confirmation Order been timely, that ap-peal would have been determined to be moot. A mootness analysis in the bankruptcy context is different with respect to a Confirmation Order than a constitutional analysis. *Nationwide Mut. Ins. Co. v. Berryman Products, Inc. (In re Berryman Products, Inc.),* 159 F.3d 941, 944 (5th Cir.1998). An appellate court "may decline to consider the merits of confirmation when a plan has been so substantially consummated that effective judicial relief is no longer available-even though the parties may have a viable dispute on appeal." *Id.* Under *Berryman,* there is a three-part test when considering a dismissal of a challenge to reorganization plans: 1) whether a stay has been obtained; 2) whether the plan has been substantially consummated; 3) whether the relief requested would affect either the rights of parties not before the courts or the success of the plan. *Id.*

15. In his brief, Armstrong makes several other arguments that the bankruptcy court erred when it entered the Estimation Order. Some of these arguments were not presented below

Deed, the Trust Deed Note, and the Note (hereinafter when referred to jointly "the Agreement") did not represent the true intent of the parties, or alternatively, that the Agreement was void for lack of consideration.

▮▮▮▮ The Agreement at issue defined certain property interests of these parties. Property interests of parties in bankruptcy proceedings are "created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). A promissory note is a contract that is interpreted according to the rules of contract construction. *WebBank v. American General Annuity Serv. Corp.*, 54 P.3d 1139, 1144 (Utah 2002). Here the parties entered into the Agreement in the state of Utah. In the absence of any agreement otherwise, the contract is governed by Utah state law.

▮▮▮▮ Utah employs a two-step process in interpreting contracts. *Hall v. Process Instruments & Control, Inc.*, 890 P.2d 1024, 1027 (Utah 1995). The first step is to determine whether the agreement is integrated. *Id.* An integrated agreement is a writing " 'which in view of its completeness and specificity reasonably appears to be a complete agreement ... unless it is established by other evidence that the writing did not constitute a final

expression.' " *Id.* (quoting *Union Bank v. Swenson*, 707 P.2d 663, 665 (Utah 1985) (further citation omitted)). There is a rebuttable presumption that an agreement is integrated. *Union Bank*, 707 P.2d at 665. Under the parol evidence rule, extrinsic evidence will be admissible to show that an agreement is not integrated. *Id.* Evidence that an agreement is not integrated includes evidence of forgery, fraud, duress, mistake, illegality, or the absence of consideration. *Id.*

▮▮▮▮ The second step in interpreting a Utah contract is to determine if there are any ambiguities in it. *Hall*, 890 P.2d at 1026–27. If there are any ambiguities, then extrinsic evidence may be admitted only for the purpose of clarifying these ambiguities. A term is ambiguous if it is susceptible to more than one reasonable interpretation. *Wagner v. Clifton*, 62 P.3d 440, 442 (Utah 2002). In the absence of any ambiguities, the parol evidence rule prohibits the admission of extrinsic evidence that would vary or contradict clear and unambiguous terms of the contract. *Spears v. Warr*, 44 P.3d 742, 750 (Utah 2002).

The only evidence proffered to the bankruptcy court concerning the Agreement was the Warranty Deed, the Note, and the Trust Deed.[16] Although the bankruptcy

---

including (1) whether Rushton had a duty to object to the Willow Brook Claim; (2) whether Rushton violated his fiduciary duties to the Armstrong estate; (3) whether Bailey had a duty to accept a quit claim deed in lieu of pursuing a claim against Armstrong's Estate; (4) whether Bailey waived the right to seek a deficiency on the Note when Willow Brook refused Armstrong's quit claim deed transferring the property to Willow Brook and Mountain Pacific Ventures, Inc. We decline to consider these arguments as they were not properly preserved for our review. *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir.1991) (holding that an appellate court will not consider an issue raised for the first

time on appeal). Armstrong makes one other argument, namely, whether he has had a full and fair opportunity to litigate in other courts with respect to other claims. We have no jurisdiction to decide the merits of this argument.

**16.** Armstrong argues that these documents were improperly introduced through the testimony of Bailey's expert witness, Mark Hashimoto ("Hashimoto"). However, at the hearing, Armstrong did not object to the introduction of these documents through Hashimoto and therefore, failed to preserve this issue for our review. Hearing Transcript at 11–13, *in* Bailey's App. at 10–12.

court never specifically found that the Agreement was an integrated document, it impliedly did so when it stated the following during the hearing:

> [T]he testimony has already come in that there are no other agreements. That we're only looking at four corners of the document. So I'll let you argue from the four corners of the document but any evidence that is contrary to the document or that attempts to impeach it is improper.

Hearing Transcript at 81–82, *in* Bailey's App. at 79–80. Because the agreement was integrated, the bankruptcy court did not allow any evidence that would contradict the clear terms of the document.

■■ Armstrong contends that the bankruptcy court erred when it found that the Agreement was an integrated document and did not consider any extrinsic evidence of the parties' intent. This argument is not supported by the record. The record reflects that the bankruptcy court let in almost all evidence Armstrong presented.[17] The bankruptcy court only stopped Armstrong's testimony, and the presentation of his case, after Armstrong was abusive and disrespectful to the court.[18] More important, Armstrong presented no extrinsic evidence, other than

his own unsupported testimony about his intent, that would rebut the presumption that the document was a fully integrated agreement. Not only was the bankruptcy court in the best position to assess Armstrong's credibility on this issue, but there is a preference in Utah for gleaning a party's intent from written agreements rather than "self-serving testimony." *See Glauser Storage, L.L.C. v. Smedley,* 27 P.3d 565, 570 (Utah Ct.App.2001). We conclude that the bankruptcy court did not err when it found that the Agreement was an integrated document.

■■ Armstrong's next argument is that there was a failure of consideration in the agreement and therefore the agreement was not integrated. Armstrong contends that in the absence of any proof of the value of the property, Bailey did not meet his burden in showing adequate consideration. This argument also fails.

■■ First we note that it was not Bailey's burden to show consideration; it was Armstrong's burden to show lack of consideration because he was both the maker of the Note and the party alleging lack of consideration.[19] *Olpin v. Grove Fin. Co.,* 521 P.2d 1221, 1223 (Utah 1974) (finding

---

17. The only document presented by Armstrong that was not admitted by the bankruptcy court was an document that was not the original and had been visibly altered. Hearing Transcript at 86–88, *in* Bailey's App. at 84–86.

18. The bankruptcy court ended Armstrong's testimony after the following exchange:

> MR. GILLMAN [Bailey's counsel]: If Mr. Armstrong has no more evidence to present with this witness can we proceed?
> THE COURT: Well, I'll give him a minute to collect his thoughts, Mr. Gillman.
> MR. ARMSTRONG: Your Honor, I object. These whole proceedings are ludicrous and you allow it.
> THE COURT: Do you have any evidence?

> MR. ARMSTRONG: Yes, I do. It is a war. It is stupid.
> THE COURT: Okay, you can sit down. Sit down. You're off the stand now.
> Hearing Transcript at 102–03, *in* Bailey's App. at 100–01.

19. Armstrong argues that it was Bailey's burden to prove that there was consideration for the agreement. He argues that a creditor has the burden of proving its claim once an objection has been entered. However, Armstrong is confusing the issues. At issue here is not whether the Willow Brook Claim is valid, but whether there was consideration for the Agreement that gave rise to the Willow Brook Claim, and on that point, Armstrong had the burden of proof.

the maker of the note bears the burden of proving lack of consideration.); *Int'l Harvester Co. of Am. v. Patterson,* 257 F. 411, 412 (8th Cir.1919) (analyzing promissory note with words "for value received" and finding where the words in a contract or promissory note state that there is an exchange of consideration, the burden or proof lies with the party attempting to prove a failure of consideration). Parol evidence may be admissible to show lack of consideration. *Smith,* 58 P.3d at 859 n. 4.[20]

Here, the Agreement clearly stated that there was an exchange of consideration. The Note stated that it was being executed "for value received." The Warranty Deed stated that the exchange occurred "for the sum of Ten and NO/100 Dollars and other good and valuable consideration." Armstrong never presented any evidence that the exchange did not take place. The bankruptcy court concluded that because there was a conveyance of real property, the transaction was a valid transaction.

▬ Armstrong argues that consideration was illusory because it did not represent the true value of the property. He defines consideration as the value of the Lots minus the liens and encumbrances affecting the property. This argument has no merit. Whether a contract or an agreement has valid consideration has nothing to do with the actual value of the consideration vis a vis the benefit or detriment incurred. Consideration is present " 'whenever a promisor receives a benefit or where [a] promisee suffers a detriment, however slight.' " *Healthcare Serv. Group, Inc. v. Utah Dept. of Health,* 40

P.3d 591, 596 (Utah 2002) (quoting *Gasser v. Horne,* 557 P.2d 154, 155 (Utah 1976) (brackets in original)); *see also Dementas v. Estate of Tallas,* 764 P.2d 628, 632 (Utah Ct.App.1988) (finding that " 'any detriment no matter how economically inadequate will support a promise.' ") (quoting J. Calamari & J. Perillo, *Contracts* § 55 at 107 (1970)). Here, the bankruptcy court found that there was a bargained-for exchange and, therefore, consideration. The bankruptcy court concluded that the transaction was a valid one and that there was an amount owed at the time the obligation was entered into. This finding is supported by the evidence.

Next, Armstrong argues that the bankruptcy court erred in determining the amount of Bailey's Claim in the Estimation Order because Willow Brook received payments in excess of the actual value of the Lots and therefore had no actual claim. Armstrong bases this argument on his premise that the maximum amount of consideration for the Note is $70,515.85. This figure appears to be his calculation of the net benefit from the Lots to Willow Brook. He also asserts that there are credits to the Note of $576,791.03.

In his initial premise Armstrong mischaracterizes the issue. The actual value of the Lots or the net benefit to Willow Brook from the sale of the Lots is irrelevant with respect to the amount Armstrong owed Willow Brook under the Note. As we have already observed, when there is an unambiguous integrated agreement, the interpretation of the agreement is confined to the four corners of the document. The bankruptcy court found that the terms of the Note were clear and that pursuant

---

**20.** *But see Last Chance Ranch Co. v. Erickson,* 82 Utah 475, 25 P.2d 952, 958 (1933) (" '[I]f the consideration stated appears as a clear and unambiguous statement of part of the agreement, representing an actual contractual term and something more than a mere formal requisite, such a term of the contract must be regarded in the same light as any other material term of the contract and extrinsic evidence to vary or contradict it is inadmissible[.]' " (quoting 4 *Jones'[s] Commentaries on Evidence* (2d ed.) 2854)).

to it, Armstrong promised to pay Willow Brook $150,000. At the hearing, there was evidence that he had made a total of $62,245.77 in payments on the Note. There was also evidence that he was credited for some equity remaining in Lot 12 after the foreclosure sale. The bankruptcy court concluded that Willow Brook had a remaining claim of $81,997.29. All of these findings are supported by the record. With respect to the latter part of Armstrong's syllogism that he had a reciprocal claim of $576,791.03, there is nothing in the record before us to support that assertion.[21]

As further support for his contention that the Willow Brook Claim was improperly calculated, Armstrong argues that Willow Brook owes $20,549.99 to Chance Investments and $3,540.15 to Summit County, Utah for property taxes on the foreclosed lot.[22] He argues that because these sums have not yet been paid, Bailey impermissibly deducted them from the amount realized after Lot 12 was foreclosed and thereby, reduced Armstrong's credits for the fair market value of the property. Armstrong cites Utah Code Ann. § 57–1–32 for the proposition that a court "may not render judgment for more than the amount by which the amount of the indebtedness . . . exceeds the fair market value of the property."

■ While Armstrong may be correctly citing Utah law, this particular statute is not relevant to this issue. In the Estimation Order the bankruptcy court did not render judgment on the Willow Brook Claim, it merely estimated the Willow Brook Claim for voting purposes. Assuming arguendo that the Willow Brook Claim should have been reduced by $24,090.14, that reduction would have had no impact on the ultimate result because of the other votes in Class 4 and the bankruptcy court's findings that the Trustee's Plan could have been approved pursuant to the provisions of § 1129(b). Any error by the bankruptcy court in calculating the exact amount of the claim is harmless error. *See* Fed. R. Bankr.P. 9005 (incorporating Fed.R.Civ.P. 61 (providing that any error that does not affect the substantial rights of the parties is harmless error and not grounds for granting a new trial or setting aside a verdict)). We conclude that there is no evidence that the bankruptcy court abused its discretion when it temporarily estimated Willow Brook's Claim.[23]

Armstrong's final arguments focus on what he alleges is a failure of due process. First, Armstrong argues that the Trusts were not properly noticed of the hearing on Bailey's Estimation Motion. Rule 3018(a) states that "[n]otwithstanding any objection to a claim or interest, the court after notice and hearing may temporarily allow the claim. . . ." Fed. R Bankr.P.

---

**21.** Armstrong argues that he was not permitted to put in evidence concerning these payments, which he argues occurred in various ways. However, as we have already observed, the bankruptcy court gave Armstrong extraordinary latitude in presenting his evidence. More important, in another proceeding in the Willow Brook case, a bankruptcy court considered the issue of whether Armstrong had a claim against Willow Brook and found that he had none. *See* Order Sustaining Objection to Claim No. 48, Claim of Donald E. Armstrong, *in* Bailey's App. at 131.

**22.** At the hearing, Bailey stipulated that Willow Brook did not pay either of these obligations. *See* Hearing Transcript at 76, *in* Bailey's App. at 74.

**23.** Armstrong makes an additional argument that Bailey waived his claim under Utah's One Action Rule when Bailey refused to accept a quit claim deed on Lot 12 on August 18, 1999. This argument is not properly before us as it has previously been argued and appealed in separate proceedings.

3018(a). The bankruptcy code further defines notice as "such notice as is appropriate...." 11 U.S.C. § 342(a).

As a preliminary matter, we are not certain in what capacity Armstrong is alleging a violation of due process as to the Trusts. If it is in Armstrong's individual capacity as the appellant to this appeal, he cannot invoke another's rights. *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (finding that ordinarily a party may not assert the rights of another to justify relief for himself or herself). If Armstrong is asserting the Trusts' rights in his capacity as the Trustee for the Trusts, then he is improperly doing so as they are not parties to this appeal.

■ However, assuming that this matter is properly before us, it is not clear why the Trusts should have been noticed. There is no evidence that they had any interest in these proceedings.[24] Armstrong signed the Note in his personal capacity, not as a representative of the Trusts. Second, assuming that for some reason, the Trusts were due notice, there is no evidence in the record that the Trusts did not receive notice. While they may not have received formal notice, they certainly received constructive notice. Pursuant to the Code, the Trusts were due only such notice as is appropriate. Armstrong was the trustee of the Trusts. It is undeniable that he was present at the estimation hearing.

Finally, Armstrong asserts that the bankruptcy judge was biased against him because she ruled against him, she did not allow him to present all of his evidence, and she favored the opposing counsel be-cause he was her former law partner. We have already considered Armstrong's first two arguments and have found them without merit. There is nothing in the record to support Armstrong's last contention that the bankruptcy judge was impermissibly biased toward a former law partner.[25] In fact, as we have previously observed, the bankruptcy judge gave Armstrong a great deal of latitude in presenting his case. More important, there is nothing in the record to indicate that he made this argument below.

## IV. Conclusion

For the reasons set forth above, the Estimation Order is AFFIRMED.

**24.** Armstrong also alleges that because the Confirmation Order contained an injunction against the Trusts and its beneficiaries that the Trusts were interested parties with respect to the Estimation Order. There is no apparent logical relationship between the Estima-tion Order and an injunction in the Confirmation Order, and we decline to construe one.

**25.** There is no evidence as to whether the opposing counsel was, in fact, the bankruptcy judge's former law partner.