## BROUGH v. UTE STAMPEDE ASS'N, Inc., et al.

No. 6543. Decided November 2, 1943. (142 P. 2d 670.)

*Jensen & Jensen,* of Nephi, and *Christenson & Christenson,* of Provo, for appellants.

*P. N. Anderson,* of Nephi, for respondent.

WADE, Justice.

J. W. Brough, the plaintiff and respondent herein, is the owner of real property which is located between Main and First East on Center Street, and abuts and fronts on the north side of Center Street, a public highway in Nephi City, Utah. The Ute Stampede Ass'n, Inc., one of the defendants and appellants herein, is a non-profit corporation organized by residents of Nephi City, Utah, to foster and organize community celebrations. Monte Young, the other defendant and appellant herein, is an operator of amusement concessions. His stock in trade consists of ferris wheels, merry-go-round, tilt-a-whirl, shows, eating concessions, and other paraphernalia which ordinarily go to make up carnival equipment.

About July 12, 13, 14, 15 and 16, for a period of three or four days each in the years 1939, 1940 and 1941, the Ute Stampede Ass'n promoted celebrations in the nature of "Homecoming Days" for former residents of Nephi City. The purpose was to induce as many people as possible to come to Nephi City, stay a few days and enjoy themselves, it being the belief of this organization that the greater the immigration the greater the public benefit to the denizens of Nephi City, its businesses and industries. Parades and bands were organized in which outside communities were asked and did participate; baseball games and rodeos were held. All these activities served to attract for a few days as many as 10,000 visitors to Nephi City, a community of approximately 2,500 individuals. In order to assure that

these visitors should be provided with entertainment sufficient to keep them amused for three or four days and thereby induce them to stay in the city that length of time, the Ute Stampede Ass'n decided a carnival would be the best means to achieve the desired results. Accordingly it entered into agreements with Monte Young whereby he was permitted to bring his concessions to Nephi City during the period of the celebrations.

The next problem which presented itself to appellants was the location of the carnival. It was decided that the most feasible place from a point of view of traffic and police regulation and one which would assure the greatest financial success to the carnival was on Center Street between Main and First East Streets, the intersection of Center with Main Street being the hub of Nephi's business district and also having the advantage of being paved. They thereupon obtained permission from Nephi City to locate the carnival on that street. Brough as an abutting owner objected to the carnival being placed and operated in front of his home and filed suit to enjoin them.

Section 675 of the Revised Ordinances of Nephi City, Utah, of 1931, provided that it was unlawful for any person, firm or corporation to erect or maintain any circus, dog or pony show, merry-go-round, shooting gallery, pin and ball alley, or any other game or noisy exhibition within 150 feet of any residence within Nephi City, without first obtaining the consent of the occupant or the owner of such residence. Brough having objected in 1939, the city in July, 1940, a few days before the anticipated holding of the celebration that year, amended this section to read that it should be unlawful to do the above enumerated things on the streets or public property of Nephi City without first obtaining the consent of the City Council. The City Council gave its consent in 1940 and 1941 to the placing of the carnival on Center Street between Main and First East Streets. Brough filed suit in 1940 for a temporary injunction which was not granted, and in 1941 he filed his amended and sup-

plemental complaint which contained four causes of action. These four causes of action in substance and effect alleged that during the days of the celebration in the years 1939, 1940 and 1941 his only means of egress and ingress to his home was obstructed by the great crowds of people congregated in the street attending the carnival features, and that the enjoyment of his home and his health was impaired because of the noise, turmoil, swearing and shouting of the crowds which continued into the wee hours of the morning which was the time the carnival closed, interfered with his rest and repose. He prayed for damages and for an injunction restraining defendants and appellants herein from continuing in the future to locate the carnival in the same place, as they indicated they intended to do. After trial, the court found in favor of plaintiff and granted him damages and an injunction. This is an appeal by the defendants from that judgment.

We shall hereafter refer to J. W. Brough, who is the respondent herein, as the plaintiff, and to the Ute Stampede Ass'n and Monte Young , who are the appellants herein, as the defendants.

The evidence disclosed that plaintiff's home abutted and fronted on the north side of Center Street, between Main and First East Streets in Nephi City, Utah; that this street is chiefly residential in character, although on the north corner of Main and Center Street the U. S. Post Office is located and across the street on the south corner the L. D. S. Church is located. There is also a shoe repair shop on the north side of Center Street between Main and First East Streets.

On the 12th, 13th, 14th and 15th days of July, 1939, the 10th, 11th, 12th and 13th days of July, 1940, and on the 10th, 11th and 12th days of July, 1941, the defendants placed and set up the carnival in Center Street between Main and First East Streets and part of it was in front of plaintiff's premises. The carnival equipment consisted of various sorts and kinds of stands and counters for the

sale of numbers, the sale of various kinds and sorts of edibles and articles of merchandise usual and customary at carnival concessions; and various enclosures and places of entertainment, games and exhibitions; and various amusement machinery and apparatus and music machines, including ferris wheel, sky carriage, tilt-a-whirl, merry-go-round (except in 1941), and others. As concomitant of these concessions there were the usual "barkers" or "criers" soliciting business in loud and raucous tones from the huge crowds milling around the concessions. The testimony was contradictory as to the times the carnival closed. The defendant Monte Young testifying that all concessions were closed between 10 p. m. and 12 p. m. and the plaintiff testifying that the crowds and noises continued much later. Plaintiff testified that on some occasions people would enter his premises and use it for their private purposes, and others would come and use vulgar and obscene language in the presence of himself and wife. A neighbor testified that he found empty liquor bottles and once a contraceptive on his premises during the time the carnivals were in progress. Other residents of the street, however, testified that they were not molested or annoyed by crowds. Plaintiff testified that because of the noise, the crowds and the conditions surrounding the carnival he could not sleep and his health was impaired. There was no evidence that plaintiff was not a person of ordinary sensibilities. He also testified that because of the great crowds attending the carnival it was very difficult for him to use his car in going to and from his home to work (he being in the cattle business had to use a car) and that he had to push his way through the crowds and on occasion had to require the assistance of a peace officer to clear the way for him.

The question presented to this court is: Under the facts of this case did the court err in finding the carnival a nuisance and granting the injunction and damages? We think not.

Sec. 104-56-1, U. C. L. 1933, now Sec. 104-56-1, U. C. A. 1943, provides that:

"Anything which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance and the subject of an action. Such action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance; and by the judgment the nuisance may be enjoined or abated, and damages may also be recovered."

Although the definitions of what constitutes a nuisance as found in cases and statute books are all somewhat similar, what is actually a nuisance which is actionable depends upon the facts and circumstances of each ■ case. Noises, odors, gatherings of crowds of people may or may not be an actionable nuisance depending upon the times and places in which they occur. In *Dulaney* v. *Fitzgerald*, 227 Ky. 566, 13 S. W. 2d 767, 769, 63 A. L. R. 404, an injunction granted by the lower court against the holding of circuses and carnivals on a vacant piece of property in a residential district was upheld by the Kentucky Court of Appeals, which said:

"Such things are enjoined when it can be reasonably anticipated that noises, odors and disorders will result which will prevent the occupants of neighboring dwellings from enjoying their homes in reasonable quiet and comfort."

See also *Russel et al.* v. *Nostrand Athletic Club, Inc.*, 212 App. Div. 543, 209 N. Y. S. 76, in which open air boxing exhibitions held once a week in the night time were enjoined, the arena being in a residential district; and *Hansen et al.* v. *Independent School District No. 1*, 61 Idaho 109, 98 P. 2d 959, wherein the playing of night baseball games was enjoined, the baseball park being located in a residential district; the court holding the noise and enlarged traffic was a nuisance and an infringement of the rights of residents to peaceable and quiet enjoyment of their property.

It is one of defendants' contentions that a nuisance of the type complained of by plaintiff is not actionable and is not compensable. We find no merit to this argument. In *Phillips Petroleum Co.* v. *Ruble,* Okl. Sup., 126 P. 2d 526, 142 A. L. R. 1303. Ruble, the plaintiff in the original action, was allowed to recover damages for a temporary nuisance which caused personal inconvenience, annoyance and discomfort. The nuisance in that case had been the previous maintenance and operation of a power plant by the company four blocks distant from plaintiff's residence. See also annotations on this subject in 142 A. L. R. commencing on page 1310. We find therefore that the lower court did not err in awarding damages to plaintiff.

The defendants further contend that the placing of the carnival in the street was a lawful enterprise because the city licensed and permitted it to be placed there, at least for the year 1940 and 1941 when the ordinance was passed permitting such a licensing, and for the year 1939 they claim the plaintiff herein consented to its being placed on Center Street between Main and First East Streets. As to the year 1939 the evidence was undisputed that plaintiff objected to its being placed there but said he would not object if they promised to place it in a different street at least every other year. This the defendants did not do and therefore it ill becomes them to claim a consent which they acknowledged was based on certain conditions which they rejected. As to the years 1940 and 1941 the evidence was conclusive that the carnival was operated chiefly for the financial benefit of defendant Monte Young. Its claim that the operation of the carnival was a public benefit and that the city therefore could lawfully license it do not appear to us to be consonant with the facts. While it is true that a city has under its police power the authority to regulate the public highways within its jurisdiction and enact ordinances to effect such regulations, it does not in the absence of legislation have the right to license a nuisance of a public

street for purely private gain. *City Council of Augusta* v. *Reynolds*, 122 Ga. 754, 50 S. E. 998, 999, 69 L. R. A. 564, 106 Am. St. Rep. 147, involved the right of a city to license a carnival and fair to be held on its public streets for a period of a week. The operator of the carnival was a company which was a part of the state militia. The court in that case said:

"The power over streets given to municipal corporations under the ordinary grants in municipal charters does not authorize the municipal authorities, even by express ordinance, to permit the erection in streets of temporary obstructions for purely private gain. The enterprise described in the petition is not in any sense a public enterprise. It is merely a scheme of private individuals for pecuniary gain, and the use of the street, either in whole or in part, has not as a basis any purpose which the law would recognize as lawful, in the absence of express legislative authority permitting it. In other words, the enterprise sought to be carried on in the street would, if permitted, be nothing more or less than a public nuisance, and a public nuisance of a most aggravating character." See also Van Cleff v. City of Chicago, 240 Ill. 318, 88 N. E. 815, 23 L. R. A., N. S., 636, 130 Am. St. Rep. 275.

The question presents itself did the court err in granting an injunction, the nuisance not being in existence at the time suit was filed?

Defendants had operated the carnival in the street abutting plaintiff's property in 1939, 1940 and 1941. Plaintiff had sought a restraining order from the court in 1940 but had failed to receive one. He later filed an amended supplemental complaint again seeking an injunction and damages. The defendants indicated by their pleadings and their arguments to the court that they again intended to place the carnival in the street abutting plaintiff's residence. They contended vehemently that it was the most suitable place for their purposes; that their project was highly beneficial to the community and indicated that they intended to continue holding the carnival in that street since it had proved very successful there. Under these circumstances, we believe the court did not err in granting

the injunction. Even though a nuisance is not in existence at the time suit is filed, or is abated after suit is filed, the court has jurisdiction to grant the injunction where there is a reasonable apprehension that the nuisance will be created or will be renewed. See *Barnard* v. *Finkbeiner et al.,* 162 App. Div. 319, 147 N. Y. S. 514, 516. In that case the court granted an injunction against the frequent use of vile and profane swearing and talk by defendants who were tenants in a building adjoining plaintiff's theater, such conduct being a nuisance to plaintiff, his family and patrons. The defendants in that case argued that injunction would not lie because the injury was not of continuous character, nor was there a threat to continue. The court said:

> "As to the threats to continue, the appellant loses sight of the distinction between future acts which may or may not be a nuisance, according to the fashion of the doing thereof, and future acts of which the very doing constitutes nuisance. As to the latter, an equity court may decree its injunction, if it is satisfied by the evidence that there is a reasonable probability of their doing."

See also *City Council of Augusta* v. *Reynolds,* supra; *Edmunds* v. *Duff,* 280 Pa. 355, 124 A. 489, 33 A. L. R. 719.

The defendants assign as error the court's taking judicial notice of the kind of noises emanating from a carnival. By their pleadings the defendants admitted that the usual noises attendant upon a carnival were present. Carnivals are not limited to particular areas and known only to particular groups of people. Most people have attended carnivals and its activities and attendant noises and smells are commonly known. It is within the discretion of the court under such circumstances to determine if it will take judicial notice and this court will not find that it erred in doing so. As stated in 15 R. C. L. pages 1057, 1058:

> "* * * courts should take notice of whatever is or ought to be generally known, within the limits of their jurisdiction, for justice

does not require that courts profess to be more ignorant than the rest of mankind.

Judgment affirmed. Costs to respondent.

WOLFE, C. J., and McDONOUGH and MOFFAT, JJ., concur.

LARSON, Justice (concurring).

I concur in affirming the judgment. I wish, however, to sound a warning against any attempt to carry the rule laid down in the opinion beyond the scope of the facts as they here existed. The opinion must not be construed to permit injunctions against community celebrations and demonstrations just because they may involve some unusual noises, commotions and crowds, or cause some temporary inconvenience to some inhabitants. Community efforts, celebrations and demonstrations are generally in the public interest and welfare. They tend to develop community spirit, cooperative effort, and interest in those things and activities which engage the populace generally. They give an added impulse to the spirit, occasion, or objective of the demonstration. Patriotism, loyalty and devotion may be stimulated by celebrations of Independence Day, Pioneer Day and Thanksgiving. Production of better crops and markets are encouraged by Peach Day, Strawberry Day, Onion Day, and such as carried out in some of our communities. Such things tend to make a more enlightened, enthusiastic, loyal and alert citizenship, the achievement of which is a matter of public concern and welfare. *McGrew* v. *Industrial Comm.*, 96 Utah 203, 85 P. 2d 608; *Mulcahy* v. *Public Service Comm.*, 101 Utah 245, 250, 117 P. 2d 298. Though they may involve some individual inconveniences and irritations, I opine that the right of the public generally to innocent amusement and relaxation, even with some hilarity, is an incident of community life to which all must submit. Such right is a substantial one, and when reasonably exercised, must not be curtailed by whim, caprice, irritant dispositions, or for temporary annoyances.