2008 UT App 234

Ronald R. WHALEY and Melanie A. Reif, Plaintiffs and Appellants,

v.

PARK CITY MUNICIPAL CORPORATION; Randy Barton dba The Wooden Dog and Mountain Town Stages; Park City Arts Council, a Utah nonprofit corporation; and Mountain Town Stages, a Utah nonprofit corporation, Defendants and Appellees.

No. 20050982–CA.

Court of Appeals of Utah.

June 19, 2008.

Russell A. Cline, Salt Lake City, for Appellants.

Mark D. Harrington, Thomas A. Daley, Polly Samuels–McLean, Dwayne A. Vance, and Christina Inge Miller, Park City, for Appellees.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

McHUGH, Judge:

¶ 1 Ronald R. Whaley and Melanie A. Reif (Plaintiffs) appeal the trial court's dismissal of their takings claim and the grant of summary judgment on their nuisance claims and their claims to invalidate certain ordinances passed by Park City Municipal Corporation (Park City). Plaintiffs further appeal the trial court's denial of their motions to reconsider the same rulings. We affirm in part and reverse and remand with respect to Plaintiffs' nuisance and takings claims.

## BACKGROUND [1]

¶ 2 This case is a noise dispute concerning amplified, outdoor concerts that were held near Plaintiffs' home in Old Town, Park City. Park City authorized the concerts by issuing permits in 1999 and then by adopting ordinances in 2000 and 2001 (the Outdoor Music Ordinances), see Park City, Utah, Ordinance 00–36 (June 1, 2000); id. Ordinance 01–16 (May 10, 2001). The 1999 permits authorized concerts every Tuesday between June 15, 1999, and August 31, 1999, "at a reasonable level as not to unduly disturb the surrounding neighborhood." The 2000 ordinance authorized outdoor music at the Town Lift Plaza and the Summit Watch Plaza each for up to five hours a day, two days a week, at a maximum sound level of ninety decibels.[2] See Park City, Utah, Municipal Ordinance 00–36 § 4–8a–4(B), –6(A), –7(C). Park City Arts Council (Arts Council) was the only licensee designated by the 2000 ordinance. See id. § 4–8A–9(A). The 2001 ordinance eliminated Town Lift Plaza as one of the

venues and added other venues not relevant to this appeal; concerts at Summit Watch Plaza continued at ninety decibels and were authorized on Tuesdays, Fridays, and Saturdays from 5:00 p.m. to 8:00 p.m. See id. Ordinance 01–16 § 4–8A–4, –6. The 2001 ordinance also substituted Mountain Town Stages (MTS) as the sole licensee. See id. § 4–8A–9.[3] Both before and after the Outdoor Music Ordinances were enacted, Randy Barton functioned as the concert promoter and sound controller for at least one of the concert venues at issue.[4]

¶ 3 Plaintiffs live in the historic district of Park City, near the lower section of Main Street. Both Town Lift Plaza and Summit Watch Plaza were developed after Plaintiffs moved into their home. Town Lift Plaza is located approximately 150 feet from Plaintiffs' home; Summit Watch Plaza is approximately 380 feet away. Because of Plaintiffs' close proximity to the venues, the outdoor concerts impeded Plaintiffs' use of their home. According to Plaintiffs, "Basic life activities, such as sleeping, resting, relaxing, working, studying, reading, or doing anything that required concentration, were impossible due to the loud noise created by the outdoor music concerts."

¶ 4 Plaintiffs repeatedly complained about the concerts to Barton, the permit holders, the Park City Police, the Park City Planning Commission, and the City Council for Park City. In 1999, Park City revoked at least two sound permits for violations of the permit conditions that required sound levels to "remain at a reasonable level as not to unduly disturb the surrounding neighborhood." Plaintiffs' complaints also prompted Park

---

1. Because this appeal primarily concerns the trial court's grant of summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to [Plaintiffs,] the non-moving party." *Ellsworth Paulsen Constr. Co. v. 51–SPR–LLC,* 2008 UT 28, ¶ 12, 183 P.3d 248 (internal quotation marks omitted). However, we acknowledge that many of the facts are in dispute.

2. Park City's general noise ordinance provides that "[a] measurement of sixty-five (65) decibels shall be considered to be excessive and unusually loud." Park City, Utah, Municipal Code § 6–3–9(B) (2008), *available at* http://www.parkcity.org/government/codesand policies/title_6.html. The

outdoor concerts are an exception to this general ordinance. *See id.* § 6–3–10(J).

3. Park City has continued to alter these ordinances and no longer identifies any individual entity as the sole licensee. *See* Park City, Utah, Municipal Code §§ 4–8A–1 to –12 (2008), *available at* http://www.parkcity.org/government/codesandpolicies/title_4.html. The current City Code does authorize ninety-decibel, outdoor concerts at the Town Lift Plaza and the Summit Watch Plaza. *See id.* § 4–8A–6(A), (C).

4. Park City, Randy Barton, Arts Council, and MTS are collectively referred to as "Defendants."

City to adopt the Outdoor Music Ordinances, which provided more direct guidelines concerning the concerts. These ordinances were passed after several reports and hearings and after Park City received recommendations from "a University of Utah class concerning the effects and regulation of noise and the construction of sound mitigating stages, to properly set forth reasonable regulations and time limits to substantially mitigate the effects of such music upon neighboring residents and businesses." *See id.* Ordinance 01–16, at 1. Plaintiffs contest the reasonableness and effectiveness of the limitations contained in the ordinances. For example, Plaintiffs' acoustical expert testified by affidavit that the sound mitigating stages required by the ordinances "actually funnel sound directly into certain residential areas."

¶ 5 Plaintiffs continued to complain about the outdoor concerts and brought suit when no further action was taken by Defendants. Plaintiffs alleged eight causes of action—three nuisance claims, one claim for injunctive relief, one claim alleging violations of the general noise ordinance, one claim alleging violations of the 1999 permits, one claim challenging the Outdoor Music Ordinances, and one "takings" claim. Before filing an answer, Defendants filed a Motion for Summary Judgment and to Dismiss.[5] The trial court granted Defendants' motions. When the trial court refused to reconsider its rulings, Plaintiffs appealed.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Plaintiffs identify twelve issues on appeal. However, these issues are more appropriately condensed into four categories.

¶ 7 First, Plaintiffs argue the trial court erred in granting summary judgment on their nuisance claims. Summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "This court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, ¶ 7, 184 P.3d 610 (internal quotation marks omitted).

¶ 8 Second, Plaintiffs challenge the constitutionality of the Outdoor Music Ordinances. "We review a constitutional challenge to an ordinance for correctness, giving no deference to the trial court." *Salt Lake City v. Wood*, 1999 UT App 323, ¶ 4, 991 P.2d 595.

¶ 9 Third, Plaintiffs challenge the trial court's dismissal of their takings claim for failure to exhaust their administrative remedies. We review this issue for correctness. *See Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶¶ 9, 11, 34 P.3d 180; *Stichting Mayflower Mountain Fonds v. Park City Mun. Corp.*, 2007 UT App 287U, para. 2, 2007 WL 2446489 (mem.).

¶ 10 Fourth, Plaintiffs challenge the trial court's denial of their motions for reconsideration. "A trial court's decision to grant or deny a motion to reconsider summary judgment is within the discretion of the trial court, and we will not disturb its ruling absent an abuse of discretion." *Timm v. Dewsnup*, 921 P.2d 1381, 1386 (Utah 1996) (emphasis omitted).

## ANALYSIS

I. The Grant of Summary Judgment on Plaintiffs' Nuisance Claims

¶ 11 "There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' " W. Page Keeton et al., *Prosser and Keeton on the Law of Torts (Prosser on Torts)* § 86, at 616 (5th ed.1984). The truth of Prosser's declaration is substantiated by this case, which raises a number of issues that require a

---

**5.** Defendants' motions sought summary judgment on five of Plaintiffs' claims, sought dismissal for lack of jurisdiction on Plaintiffs' takings claim, and argued Plaintiffs failed to state a claim upon which relief could be granted on all of the remaining claims. Because Defendants' motions and supporting memoranda included exhibits and affidavits, their arguments that Plaintiffs' pleadings failed to state a claim upon which relief can be granted must be decided in accordance with rule 56 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 12(b).

careful analysis of Plaintiffs' claims and of the law on nuisance.

¶ 12 The common law recognized two types of nuisance claims: public and private. *See id.* at 618; Restatement (Second) of Torts § 821A & cmt. a (1979).[6] Utah law also recognizes both causes of action, and the legislature has adopted distinct statutory provisions codifying each of these theories. *See* Utah Code Ann. § 76–10–803 (2003) (public nuisance); Utah Code Ann. § 78–38–1 (2002) (private nuisance). Here, Plaintiffs alleged, and the trial court dismissed, both nuisance causes of action.[7] Specifically, the trial court ruled that the licenses and ordinances authorized by Park City barred Plaintiffs' claims. We address the trial court's ruling separately for each claim of nuisance.

A. Public Nuisance

¶ 13 "A public nuisance is a crime against the order and economy of the state...." Utah Code Ann. § 76–10–803. "The original remedies for a public nuisance were a prosecution for a criminal offense or a suit to abate or enjoin the nuisance brought by or on behalf of the state or an appropriate subdivision by the proper public authority." Restatement (Second) of Torts § 821C cmt. a (1979). Nevertheless, "[w]hile the civil redress of the societal wrong caused by a public nuisance is usually through an action for abatement by a public official, private actions for damages may also be pursued." *Erickson v. Sorensen*, 877 P.2d 144, 148 (Utah Ct.App.1994) (citations omitted); *see also Lewis v. Pingree Nat'l Bank*, 47 Utah 35, 151 P. 558, 561 (1915) (allowing private action for

public nuisance); Restatement (Second) of Torts § 821C (discussing private recovery for public nuisance). However, the plaintiff in a private suit must establish additional elements beyond those required to be proven by a public entity. *See, e.g., Erickson*, 877 P.2d at 148–49. In this case, Plaintiffs must establish the following elements to recover on their claim: (1) the alleged nuisance consisted of "*unlawfully* doing any act or omitting to perform any duty," Utah Code Ann. § 76–10–803(1) (emphasis added); (2) the "act or omission ... in any way render[ed] three or more persons insecure in life or the use of property," *id.* § 76–10–803(1)(e);[8] (3) Plaintiffs "suffered damages different from those of society at large," *Erickson*, 877 P.2d at 148; *accord Lewis*, 151 P. at 561; (4) Defendants caused or are responsible for the nuisance complained of; and (5) "[D]efendant[s'] conduct was unreasonable," *Erickson*, 877 P.2d at 148–49.

¶ 14 In this case, the trial court granted summary judgment on Plaintiffs' public nuisance claim because most of Defendants' actions were specifically authorized by license and, later, by the Outdoor Music Ordinances. Because we hold that specific authorization prevents Plaintiffs from establishing the "unlawful" act or failure to act element required by section 76–10–801(1), we affirm the trial court's ruling to the extent Defendants acted in conformity with the Park City licenses and ordinances. However, we reverse the trial court's ruling with respect to the 1999 concerts that violated the terms of the applicable permits.

¶ 15 The exact meaning of the term "unlawfully" as used in section 76–10–803(1) is

---

6. "The two [causes of action] have almost nothing in common, except that each causes inconvenience to someone, and it would have been fortunate if they had been called from the beginning by different names." W. Page Keeton et al., *Prosser on Torts* § 86, at 618 (5th ed.1984) (footnote omitted).

7. In addition to these two nuisance claims, Plaintiffs alleged a "common law nuisance" claim. Because Plaintiffs fail to address how this third claim is different from their two other nuisance claims, we decline to address it. *See generally* Restatement (Second) of Torts § 821A cmt. a ("Any harm ... that does not fall within either of the two stated categories is not a nuisance....").

8. Defendants argue that Plaintiffs did not present any evidence that three or more persons were impacted by the concerts. We disagree. Plaintiffs' noise expert testified in his affidavit that "[t]he amplified music will emanate beyond the boundaries of the immediate business establishment ... to nearby residents, including [Plaintiffs], and the level of noise reaching such individuals will likely interfere with residents' ability to ... carry on normal activities around one's property." This statement, along with Plaintiffs' affidavit testimony that the concerts were audible at other homes in Plaintiffs' area, creates an issue of fact that cannot be resolved on summary judgment.

presently unresolved. The statute itself "is by no means a model of clarity." *Erickson*, 877 P.2d at 147. Moreover, this court's plurality decision in *Erickson* further complicated the matter. In that case, Judge Orme, Judge Jackson, and Judge Bench each rendered a separate opinion interpreting the term differently. Judge Orme authored the main opinion, holding that unlawfully meant " 'wrongful' in a fairly broad sense, rather than illegal in a technical sense." *Id.* at 148. Judge Jackson concurred in the result, but followed a different rationale on the interpretation of the term. *See id.* at 152 (Jackson, J., concurring). Judge Jackson concluded that the statute's use of the term "unlawfully" "requires [the plaintiff] to allege and prove that what [the defendant] did violated a pre-existing law." *Id.* Judge Bench dissented and offered a third interpretation: "If the factfinder determines that the public nuisance statute is violated . . . the defendant is liable without any showing of 'unreasonable conduct'. . . ." *Id.* at 153 (Bench, J., dissenting). In other words, the violation of the nuisance statute is itself the unlawful conduct. *See id.* at 154–55.

¶ 16 Because of the unique facts of this case, we need not resolve the competing interpretations of the term "unlawfully." Here, the outdoor concerts were either specifically authorized by Park City and therefore were not unlawful by any of these definitions,[9] or they were conducted in violation of both the permits and the general noise ordinances and were therefore unlawful under each of the competing definitions announced in *Erickson*.

¶ 17 Even though the law allows private individuals to assert public nuisance claims, by definition, public nuisances are only those occurrences that impact the order and economy of the state or the public at large. *See* Utah Code Ann. § 76–10–803

(2003); *Solar Salt Co. v. Southern Pac. Transp. Co.*, 555 P.2d 286, 289 (Utah 1976) ("To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." (internal quotation marks omitted)); Restatement (Second) of Torts § 821B(1) (1979) ("A public nuisance is an unreasonable interference with a right common to the general public."); W. Page Keeton et al., *Prosser on Torts* § 86, at 618 (5th ed. 1984) ("A public or common nuisance . . . is a species of catch-all criminal offense, consisting of an interference with the rights of the community at large. . . ."). In this case, the public at large, through its elected officials, issued licenses and passed specific ordinances authorizing amplified, outdoor concerts. Indeed, Park City's City Council, acting on behalf of its citizens, expressly determined that the concerts "have a positive effect on both the existing businesses around them *and the community at large.*" *See* Park City, Utah, Ordinance 00–36 (June 1, 2000) (emphasis added); *id.* Ordinance 01–16 (May 10, 2001) (emphasis added). Plaintiffs cannot prevail on a public nuisance claim on the theory that Defendants acted unlawfully and harmed the community at large when, in fact, Defendants merely acted in a manner that was explicitly authorized and invited by that very community. Accordingly, we hold that Defendants' actions did not constitute a public nuisance to the extent they were specifically authorized by Park City.

¶ 18 We find additional support for our holding in a long-standing case from the United States Supreme Court. In *Transportation Co. v. Chicago*, 99 U.S. 635, 25 L.Ed. 336 (1879), the plaintiffs asserted a claim of *public* nuisance when access to their property was blocked because of road work that was specifically authorized by the state and directed by the city. *See id.* at 639–40. The

9. The specific authorization from Park City distinguishes this case from *Erickson v. Sorensen*, 877 P.2d 144 (Utah Ct.App.1994). In *Erickson*, the defendant engaged in unauthorized but legal activity by leaving a road construction sign off the road yet still protruding into the bicycle lane. *See id.* at 146. Here, Defendants primarily engaged in activities that were not only legal, but were also expressly authorized by Park City and

declared to be in the best interests of that community. *See generally* W. Page Keeton et al., *Prosser on Torts* § 88A, at 633 (5th ed. 1984) ("There would seem to be a fundamental difference between a general zoning ordinance that authorizes many different kinds of uses within broad classifications and an authorization of a specific use. . . .").

Supreme Court affirmed the trial court's verdict in favor of the defendant. *See id.* at 640–61. Specifically, the Court reasoned:

> A legislature may and often does authorize and even direct acts to be done which are harmful to individuals, and which without the authority would be nuisances; but in such a case, if the statute be such as the legislature has power to pass, the acts are lawful, and are not nuisances, unless the power has been exceeded.... If this were not so, the suffering party would be entitled to repeated actions until an abatement of the [approved activity] would be enforced, or perhaps he might restrain them by injunction.

*Id.* at 640; *see also City of Prichard v. Alabama Power Co.*, 234 Ala. 339, 175 So. 294, 294–96 (1937) (rejecting public nuisance claim where defendant was specifically authorized to erect power lines); *Middelkamp v. Bessemer Irrigating Ditch Co.*, 46 Colo. 102, 103 P. 280, 282 (1909) ("[A] public nuisance cannot exist in acts which are authorized by legislative sanction, even though the act complained of might, independent of statute, be a nuisance."); *Danville, Hazleton & Wilkesbarre R.R. Co. v. Commonwealth*, 73 Pa. 29, 38 (1873) ("[I]t is a legal solecism to call that a public nuisance which is maintained by public authority." (internal quotation marks omitted)); Restatement (Second) of Torts § 821A cmt. f (1979) ("Although it would be a nuisance at common law, conduct that is fully authorized by statute, ordinance or administrative regulation does not subject the actor to tort liability.").

¶ 19 We affirm the trial court's entry of summary judgment on Plaintiffs' public nuisance claim to the extent Defendants' actions were in conformity with the regulations and requirements set forth by the various licenses and ordinances. Our affirmance includes all of the concerts performed while the Outdoor Music Ordinances were in effect. However, Plaintiffs alleged and Defendants conceded that at least some of the

1999 concerts exceeded the regulations set forth by the permits. These few concerts were not specifically authorized but, instead, were in direct violation of the license requirement that sound levels "remain at a reasonable level as not to unduly disturb the surrounding neighborhood" and of the general noise ordinance, which declares that "[a] measurement of sixty-five (65) decibels shall be considered to be excessive and unusually loud," Park City, Utah, Municipal Code § 6–3–9B (2008), *available at* http://www.parkcity.org/government/codesandpolicies/title_6.html; *see also id.* § 6–3–10(J) (exempting "[n]oise resulting from a *duly licensed and operated* Public Outdoor Music Plaza" from the general noise restrictions (emphasis added)). Because these few concerts exceeded the authorization from Park City and were in violation of Park City's noise ordinances, the concerts were "unlawful" under each of the interpretations this court offered in *Erickson. See Erickson v. Sorensen*, 877 P.2d 144 (Utah Ct.App.1994); *see also City of Moundsville v. Ohio River R.R. Co.*, 37 W.Va. 92, 16 S.E. 514, 518 (1892) ("Acts done pursuant to the license are sheltered under it; but, if they depart from its obligation to an extent to be contrary to the law, they are not sheltered...."). Accordingly, the trial court's grant of summary judgment is reversed with respect to the few 1999 concerts that exceeded the terms of the permits.[10]

### B. Private Nuisance

¶ 20 Unlike public nuisances, which are concerned with the rights of the community at large, "[t]he essence of a private nuisance is an interference with [an individual's] use and enjoyment of land." W. Page Keeton et al., *Prosser on Torts* § 87, at 619 (5th ed.1984); *see also* Utah Code Ann. § 78-38-1 (2002) (defining private nuisances); *In re Debs*, 158 U.S. 564, 592–93, 15 S.Ct. 900, 39 L.Ed. 1092 (1895) ("The difference between a public nuisance and a private

---

10. The trial court did not address any of the other required elements of a public nuisance, and the parties did not argue them on appeal. Accordingly, we express no opinion on these issues. Moreover, although the trial court dismissed the claim against Park City for "Violation

of Conditions of Permits" on the basis of governmental immunity, neither the trial court nor Park City has raised that defense in relation to the nuisance claims. Consequently, we also do not address that defense here.

nuisance is that one affects the people at large and the other simply the individual."); Restatement (Second) of Torts § 821D ("A private nuisance is a nontrespassory invasion in the private use and enjoyment of land."). "A [private] nuisance may be the subject of an action," Utah Code Ann. § 78–38–1, and "[t]he remedy for it lies in the hands of the individual whose rights have been disturbed," W. Page Keeton et al., *Prosser on Torts* § 86, at 618 (5th ed.1984).

¶ 21 Plaintiffs allege a private nuisance claim based on an interference with the comfortable enjoyment of their property. *See* Utah Code Ann. § 78–38–1(1). Accordingly, Plaintiffs must establish the following elements to recover on their claim: (1) a substantial invasion in the private use and enjoyment of land, *see Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1243 (Utah 1998); Restatement (Second) of Torts § 822; (2) caused by Defendants or for which Defendants are responsible, *see* Restatement (Second) of Torts § 822; and (3) "the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable," *id.*; *accord Turnbaugh v. Anderson*, 793 P.2d 939, 942 (Utah Ct.App.1990).

¶ 22 Unlike public nuisance claims, private nuisance claims do not require that the defendant's actions be unlawful. Indeed,

> [u]nlike most other torts, [private nuisance law] is not centrally concerned with the nature of the conduct causing the damage, but with the nature and relative importance of the interests interfered with or invaded. The doctrine of nuisance has reference to the interests invaded, to the damage or harm inflicted, and not to any particular kind of action or omission which has lead to the invasion.... *Distinguished from negligence liability, liability in nuisance is predicated upon unreasonable injury rather than upon unreasonable conduct.*

*Branch v. Western Petroleum, Inc.*, 657 P.2d 267, 274 (Utah 1982) (emphasis added) (internal quotation marks omitted); *accord* Restatement (Second) of Torts § 822 cmt. b (1979).

¶ 23 Because unlawful conduct is not an element of a private nuisance claim, specific authorization from a municipality does not defeat such a claim. For example, in *Brough v. Ute Stampede Ass'n*, 105 Utah 446, 142 P.2d 670 (1943), the defendant participated in Nephi City's "Homecoming Days" event which was designed to attract people to Nephi City and thereby benefit its citizens, businesses, and industries. *Id.* at 671. The defendant operated a carnival, and the city council expressly consented "to the placing of the carnival on Center Street between Main and First East Streets." *Id.* The plaintiff lived near the carnival and filed suit, claiming a private nuisance. *See id.* at 671–72. The trial court granted the plaintiff damages and enjoined the carnival. *See id.* at 671. The Utah Supreme Court affirmed the trial court's ruling, even though "the placing of the carnival in the street was a lawful enterprise [and] the city licensed and permitted it to be placed there." *Id.* at 672–73; *see also Branch*, 657 P.2d at 274 ("It is of no consequence that a business which causes a nuisance is a lawful business." (citing *Mowrer v. Ashland Oil & Refining Co.*, 518 F.2d 659, 661 (7th Cir.1975) (affirming trial court's finding of private nuisance even though activity had been authorized and approved by the Oil and Gas Division of the Indiana Department of Conservation))); *Thompson v. Anderson*, 107 Utah 331, 153 P.2d 665, 666–67 (1944) (discussing *Brough* and affirming trial court's finding that lawful business was a nuisance); *id.* at 669 (Wolfe, C.J., concurring) ("A city cannot license the carrying on of a nuisance. This, I think, is the significance of the *Brough* case."); *Twenty–Second Corp. of Church of Jesus Christ of Latter-Day Saints v. Oregon Short Line R.R. Co.*, 36 Utah 238, 103 P. 243, 248 (1909) ("That neither the state nor the city could grant any one the right to create or maintain a private nuisance with impunity no doubt is sound, and is conceded to be the law."). Thus, where plaintiffs have asserted that the noises were excessive, the issue "necessarily [will] have to be determined as a question of fact and not one of law." *Oregon Short Line*, 103 P. at 249.

¶ 24 Consistent with *Brough* and numerous other cases,[11] we hold that the permits and ordinances at issue in this case do not prevent Plaintiffs from maintaining a private nuisance claim. Accordingly, we reverse the trial court's grant of summary judgment on that claim.

## C. Barton's Involvement with the Concerts

¶ 25 The trial court also granted summary judgment in favor of Barton because it ruled there was no evidence that Barton had any role in the outdoor concerts. We disagree.

 ¶ 26 Barton argues, and the trial court concluded, that there was no evidence supporting Barton's role in the concerts and therefore "no evidence that would support his personal liability." Although this issue turns on questions of fact, the matter was decided via summary judgment. Accordingly, we review the trial court's ruling for correctness and view all the facts and inferences in the light most favorable to Plaintiffs. *See Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, ¶ 7, 184 P.3d 610. Because our review of the record demonstrates there are unresolved issues of material fact, we reverse the trial court's ruling.

¶ 27 There are several facts and inferences that at least suggest Barton's involvement with the outdoor concerts. To begin with, Barton admitted being involved with the concerts. In a letter to the editor dated September 1, 1999, Barton stated:

> This summer *I have arranged for musicians and provided the sound amplification* for Park City Brewing and Smokehouse and the Town Lift Plaza. *We* were operating under a special outdoor music permit provided by the city. Last week that permit was rescinded due to complaints received from residents (one indi-

vidual in particular living near the plaza[) ]. *We* were invited to a meeting at City Hall to discuss the complaints and the future of outdoor amplified music. *We* were given a reprieve by the city and allowed to continue under new restrictions.

Randy Barton, Letter to the Editor, *Park Rec.* (Park City, Utah), Sept. 1, 1999, at A15 (emphasis added). Likewise, in his initial affidavit Barton testified that he "monitored the decibel level of all performances"; "check[ed] the decibel levels surrounding the stage, near residences, roads and businesses"; "began booking and promoting concerts in the Park City area in November 1997"; and "approached the Park City/Summit County Art[s] Council to request that they act as a fiscal sponsor for *our* operations in booking and promoting outdoor music." (Emphasis added.) Nevertheless, Barton argues that his supplemental affidavit—wherein he testifies that he had no role in the concerts other than to rent sound equipment—resolves any issues of fact in his favor. Again, we disagree.

¶ 28 On summary judgment we review the facts and inferences in favor of the nonmoving party, in this case Plaintiffs. Viewing all of Barton's statements in that light, there is evidence from which the jury could find that Barton was substantially involved in the outdoor concerts. Even without the letter to the editor, the apparent contradictions in Barton's own affidavits create an issue of fact.[12] It is for the factfinder to determine which of Barton's affidavits is more credible. *See Child v. Gonda*, 972 P.2d 425, 434 (Utah 1998) ("[I]t is the exclusive function of the jury to weigh the evidence and determine the credibility of the witnesses.").

 ¶ 29 There are other facts and inferences in the record which, when viewed in

11. *See, e.g., Baltimore & Potomac R.R. Co. v. Fifth Baptist Church*, 108 U.S. 317, 330–32, 2 S.Ct. 719, 27 L.Ed. 739 (1883) ("The legislative authorization exempts only from liability to suits, civil or criminal, *at the instance of the State; it does not affect any claim of a private citizen* for damages for any special inconvenience and discomfort not experienced by the public at large." (emphasis added)); *Commerce Oil Refining Corp. v. Miner*, 281 F.2d 465, 468 (1st Cir.1960) (declaring legal authorization is a defense to public

nuisance claims but not to claims of private nuisance); *Urie v. Franconia Paper Corp.*, 107 N.H. 131, 218 A.2d 360, 362 (1966) (same).

12. Because there are disputed issues of material fact even with Barton's supplemental affidavit, we need not address Plaintiffs' argument that the trial court erred in denying their motion to strike the supplemental affidavit. Any error is rendered harmless by our ruling on this issue.

the light most favorable to Plaintiffs, support our conclusion that summary judgment on this issue was inappropriate. For example, Plaintiffs both testified that they complained directly to Barton about the noise from the concerts and that, rather than disclaiming any involvement, Barton refused to adjust the noise levels. Likewise, the record demonstrates that during meetings with Park City's City Council, Barton made statements that could be interpreted as admitting to a significant involvement with the concerts. For example, Barton declared "that it is their intent to control the noise level so that the experience is enjoyable for people"; that "he received requests that performances be extended to 9 p.m."; "that there was never a complaint voiced last year about lack of oversight"; that in the future MTS may "apply for a concessionaire license" so that it could sell food and alcohol during the concerts; "that they purchased limiters which were installed in the sound system, but they were not effective in controlling the level of sound"; and that he "felt confident that [MTS] would obtain its non-profit status by May 1." Barton's argument that he was simply an outdoor music enthusiast who attended and supported the concerts is perhaps conceivable, but the facts and inferences in this case should have prevented summary judgment on that ground.[13]

¶ 30 To the extent the parties present any additional arguments with respect to the trial court's grant of summary judgment, these arguments are rendered moot by our rulings on the other issues.

## II. The Constitutionality of the Outdoor Music Ordinances

¶ 31 Plaintiffs argue the Outdoor Music Ordinances are constitutionally invalid for several reasons. We disagree.

¶ 32 First, we reject Plaintiffs supremacy clause arguments, takings arguments, separation of powers arguments, and due process arguments because these arguments are all predicated upon the trial court's ruling that Plaintiffs' nuisance claims were foreclosed by the Outdoor Music Ordinances.[14] Because our ruling allows Plaintiffs to proceed in part with their public nuisance claim and in full with their private nuisance claim, these constitutional arguments have been resolved.

¶ 33 Second, we reject Plaintiffs' argument that the ordinances delegated a core municipal function by transferring the power to enforce the ordinances' restrictions to Barton and Arts Council. Both ordinances expressly declared that "[t]he Police Department or other proper City official shall have access at all times to all plazas ... and may make periodic inspection of said premises whether the officer or official is in uniform or plain clothes." Park City, Utah, Municipal Ordinance 00–36 § 4–8A–7(H) (June 1, 2000); *accord id.* Ordinance 01–16 § 4–8A–7(F) (May 10, 2001). Furthermore, Park City stopped responding to Plaintiffs' complaints because of their extreme frequency and because the concerts were not exceeding the ordinances' noise restrictions. Contrary to Plaintiffs' suggestion, Park City's failure to respond to Plaintiffs' complaints does not constitute an unconstitutional delegation of its municipal functions. Accordingly, we reject Plaintiffs' argument.

¶ 34 Third, Plaintiffs also argue the ordinances constituted special legislation because they specifically identified Arts Council and MTS as the sole licensees. Even if we were to agree, this argument is rendered moot because the current ordinance allows any individual to apply for and obtain a li-

---

13. Plaintiffs further appeal the trial court's grant of summary judgment on their nuisance claims because they argue the trial court erred in granting summary judgment before Defendants filed an answer. We disagree. "A party against whom a claim, counterclaim, or cross-claim is asserted ... may, *at any time,* move for summary judgment as to all or any part thereof." Utah R. Civ. P. 56(b) (emphasis added).

14. Plaintiffs argue in their initial brief to this court that their "cause of action" was taken, thereby violating their constitutional rights. For the first time in their reply brief, Plaintiffs assert a direct taking of real property by arguing that the noise resulted in an inverse condemnation of their real property. We do not address arguments raised for the first time in a reply brief. *See Healthcare Servs. Group, Inc. v. Utah Dep't of Health,* 2002 UT 5, ¶ 25 n. 4, 40 P.3d 591.

cense. *See* Park City, Utah, Municipal Code § 4–8A–1 to –12 (2008), *available at* http://www.parkcity.org/government/codesandpolicies/title_4.html; *see also State v. Sims*, 881 P.2d 840, 841 (Utah 1994) ("An issue on appeal is considered moot when the requested judicial relief cannot affect the rights of the litigants." (internal quotation marks omitted)). Furthermore, invalidating section 4–8a–9 of the Outdoor Music Ordinances would not impact Plaintiffs' claims. Rather, at a maximum, it would declare that in 2000 and 2001, Park City should have allowed *additional* individuals the opportunity to seek and obtain permits to hold outdoor, amplified concerts. Plaintiffs do not allege that they applied for and were denied such permits.

¶ 35 Fourth, Plaintiffs argue that the Outdoor Music Ordinances "[are] 'repugnant to law' because [they]: (1) violate[ ] the Supremacy Clauses ... and constitute[ ] a per se taking ... (2) violate[ ] the Separation of Powers provision ... (3) violate[ ] the Due Process Clauses ... (4) constitute[ ] special legislation ... and (5) delegate[ ] a core governmental function." In other words, Plaintiffs simply rehash the same constitutional arguments presented earlier in their brief.[15] For the same reasons previously discussed, we again reject those arguments.

### III. Plaintiffs' Takings Claim [16]

¶ 36 The trial court dismissed Plaintiffs' takings claim after determining that it lacked jurisdiction because Plaintiffs failed to exhaust their administrative remedies. The trial court relied on Park City Municipal Code section 15–1–19(C), which states that "[a]ny Owner of private Property who believes that his/her Property is proposed to be

'taken' by an otherwise Final Action of the City may Appeal the City's decision to the Takings Appeal Board within thirty (30) days after the decision is made." Park City, Utah, Municipal Code § 15–1–19 (2008), *available at* http://www.parkcity.org/government/codesandpolicies/title_15_c_1.html.[17] Because Plaintiffs did not appeal to the Takings Appeal Board, the trial court determined that Plaintiffs failed to exhaust their administrative remedies and dismissed their claim.

¶ 37 Although section 15–1–19's requirements appear straightforward, there is a list of applicable definitions that apply to the capitalized terms. *See id.* § 15–15–1 ("For the purpose of the [Land Management Code (LMC)], certain numbers, abbreviations, terms, and words shall be used, interpreted, and defined as set forth herein. Defined terms will appear as proper nouns throughout this Title."). Most importantly, the term "Owner" is defined as "[a]ny Person, or group of Persons, having record title to the Property *sought to be developed or subdivided* and the Owner's Agent." *Id.* § 15–15–1.159 (emphasis added). Because the term "Owner" appears as a proper noun in section 15–1–19, *see id.* § 15–1–19(C) ("Any Owner of private Property ...."), it is clear that the definition provided in section 15–15–1.159 is applicable, *see id.* §§ 15–15–1 ("Defined terms will appear as proper nouns throughout this Title."), –1–4 ("All capitalized proper nouns in the text of the LMC are defined terms. Defined terms are located in LMC Chapter 15–15."). Thus, with the appropriate definition included, section 15–1–19 reads: "Any ['Person, or group of Persons, having record title to the Property *sought to*

---

15. In one final sentence, Plaintiffs also argue that "the Outdoor Music Ordinance[s are] void because [they] infringe[ ] upon Plaintiffs' fundamental rights to use and enjoy their property, and [they] fail[ ] to satisfy minimal scrutiny and [are] overinclusive." (Footnote omitted.) Although Plaintiffs provide citations in separate footnotes, Plaintiffs fail to develop each of these complicated legal arguments in the manner required for review on appeal. *See West Jordan City v. Goodman*, 2006 UT 27, ¶ 29, 135 P.3d 874. The effectiveness of appellate briefs is enhanced greatly when parties hone in on their best arguments instead of presenting every conceivable issue in a terse and unhelpful manner.

16. Plaintiffs argue to this court that the "taking" of their cause of action for nuisance violated the United States and Utah constitutions. The "takings" claim dismissed by the trial court was for the taking of Plaintiffs' real property.

17. The trial court and the parties appear to have relied on an earlier version of the Park City Code. However, the operative language quoted by the parties is the same as the current code, so we cite to the current code as a matter of convenience.

*be developed or subdivided*'] who believes that his/her Property is proposed to be 'taken' by an otherwise Final Action of the City may Appeal the City's decision to the Takings Appeal Board within thirty (30) days after the decision is made."[18] *Id.* §§ 15–1–19, –15–1.159 (emphasis added).

¶ 38 In this case, Plaintiffs did not seek to have the property developed or subdivided. Accordingly, Plaintiffs argue they were not Owners and were not required to appeal to the Takings Appeal Board. Park City fails to argue that section 15–15–1.159's definition of Owner is inapplicable or otherwise explain how Plaintiffs meet that definition.[19] Because Plaintiffs are not an Owner as defined in section 15–15–1.159, we reverse the trial court's ruling that Plaintiffs failed to exhaust the administrative remedies provided in section 15–1–19.

### IV. Plaintiffs' Motions to Reconsider

¶ 39 Plaintiffs' final argument is that the trial court erred when it denied their motions to reconsider its order of summary judgment. However, this appeal concerns the same issues Plaintiffs asked the trial court to reconsider. Having decided these issues on this appeal, the question of whether or not the trial court should have reconsidered its rulings is moot. To the extent we reverse the trial courts rulings, Plaintiffs have obtained the relief requested. To the extent we affirm the trial courts rulings, reconsideration ultimately would not have produced a different result.

### CONCLUSION

¶ 40 We reverse the trial court's grant of summary judgment on Plaintiffs' claim for private nuisance and reverse in part the grant of summary judgment on Plaintiffs' claim for public nuisance. We further re-

verse the trial court's dismissal of Plaintiffs' takings claim. We affirm the trial court's rulings with respect to all of the other issues raised on appeal. Because none of the parties was entirely successful on appeal, each party shall bear its own costs.

¶ 41 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.

---

18. Notably, this provision falls within the chapter addressing amendments to the Land Management Code and zoning map, *see* Park City, Utah, Municipal Code § 15–1–7 (2008); conditional use issues, *see id.* § 15–1–10; master planned developments, *see id.* § 15–1–11(A); and exactions, *see id.* § 15–1–20–issues that concern the development and subdividing of property, rather than a takings claim premised upon the licensing of a nuisance.

19. We decline to address Park City's argument that there was no governmental action because this issue is inadequately briefed. Although there may be a lack of governmental action or other potential defenses, we believe the best course is to allow the parties the opportunity to fully brief and argue these issues on remand.